[No. B187797. Second Dist., Div. Seven. June 12, 2006.]

PARMINDER SINGH, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
UHS OF DELAWARE, INC., et al., Real Parties in Interest.

388

COUNSEL

Initiative Legal Group, Mark Yablonovich and Marc Primo for Petitioner.

No appearance for Respondent.

Cotkin, Collins & Ginsburg, William D. Naeve, Ellen M. Tipping and Terry L. Kesinger for Real Parties in Interest.

Ogletree, Deakins, Nash, Smoak & Stewart, Paul M. Gleason and Dominick C. Capozzola for Torrance Memorial Medical Center as Amicus Curiae on behalf of Real Parties in Interest.

Sheppard Mullin Richter & Hampton, Richard J. Simmons and Derek R. Havel for California Hospital Association as Amicus Curiae on behalf of Real Parties in Interest.

OPINION

ZELON, J.—This petition for writ of mandate asks us to determine when health care employees working beyond an alternative workweek schedule of three 12-hour days are entitled to receive overtime pay. To answer that question, we must decide whether the regulatory authority for such overtime is section 3(B)(1) or section 3(B)(8) of the Industrial Welfare Commission Wage Order No. 5-2001 (Wage Order 5, found at Cal. Code Regs., tit. 8, § 11050, subd. 3(B)(1), (8)).[1] Because the plain language of Wage Order 5 supports the superior court's determination that section 3(B)(8) controls, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. Real parties in interest UHS of Delaware, Universal Health Services of Delaware, and Universal Health Services operate Lancaster Community Hospital (jointly Lancaster). Pursuant to existing wage laws, in November 2000, two-thirds of Lancaster's Medical/Surgical Unit nurses elected by secret ballot an alternative workweek schedule[2] of three 12-hour days (3/12).

---

[1] Hereafter, all undesignated section references are to sections of the Industrial Welfare Commission Wage Order No. 5-2001, found at California Code of Regulations, title 8, section 11050, Register 2002, No. 16 (Apr. 19, 2002) pages 1315–1316.6.

[2] "An 'alternative workweek schedule' means any regularly scheduled workweek requiring an employee to work more than eight (8) hours in a 24-hour period." (Cal. Code Regs., tit. 8, § 11050, subd. 2(A).)

In April 2001, Lancaster employed petitioner Parminder Singh as a registered nurse. Singh signed an agreement in accordance with the adopted alternative workweek schedule that he would be bound by the following terms: the regular rate of pay (regular pay) for work performed within the 3/12 alternative workweek schedule; one and one-half times the regular rate of pay (time-and-a-half pay) for work performed beyond 40 hours in the workweek; and double the regular rate of pay (double time pay) for work in excess of 12 hours in a workday. In August 2003, Singh resigned "due to circumstances that [were] beyond [his] control."

In September 2004, Singh sued Lancaster for violation of Labor Code sections 201 through 202, 226, 511 and 1198, violation of Business and Professions Code section 17200 et seq., and conversion and theft of labor. Among other remedies, Singh sought unpaid overtime compensation for all hours worked on days other than those scheduled by the alternative workweek schedule.

Lancaster moved for summary adjudication, contending that, for health care employees on a 3/12 alternative workweek schedule, section 3(B)(8) mandates time-and-a-half pay only after 40 hours of work have been performed. Singh argued that the general overtime provision under section 3(B)(1) mandates time-and-a-half pay for all hours worked beyond the regularly scheduled alternative workweek schedule, including hours 37 to 40. At hearing, the court found that summary adjudication was not appropriate, because the issue to be determined was the scope, rather than the existence, of Lancaster's duty to pay overtime. (*Regan Roofing Co. v. Superior Court* (1994) 24 Cal.App.4th 425, 435 [29 Cal.Rptr.2d 413], and *Linden Partners v. Wilshire Linden Associates* (1998) 62 Cal.App.4th 508, 518 [73 Cal.Rptr.2d 708].) With the parties' agreement, the motion for summary adjudication was deemed a motion for determination of a legal issue. The court then ruled that section 3(B)(8) governs overtime pay for health care employees on the 3/12 alternative workweek schedule, making overtime due only after 40 hours of work in a week, or over 12 hours in a given day.

Singh sought a writ of mandate directing the trial court to set aside its ruling; we issued an order to show cause. While the petition was pending, pursuant to Code of Civil Procedure section 166.1, Singh moved for, and the trial court issued, an interlocutory order expressing the view that appellate resolution of the controlling question of law would advance the litigation.[3]

---

[3] The court's tentative order set forth: "Plaintiff desires to seek appellate review of this court's order . . . , wherein the court determined that healthcare employers are governed by IWC Wage Order 5-2001 3(B)(8), and that the provisions of Section 3(B)(1) requiring premium overtime pay for all hours outside the regularly scheduled alternative work week do not apply to healthcare employers. [¶] This is a legal issue of first impression. The merit of at

## DISCUSSION

We are asked to decide a question of first impression: whether section 3(B)(1) or section 3(B)(8) of Wage Order 5 regulates overtime pay for health care employees on the 3/12 alternative workweek schedule. Lancaster contends that, under section 3(B)(8), health care employees on the 3/12 alternative workweek schedule are entitled to time-and-a-half pay only after performing 40 hours of work. Singh maintains that, section 3(B)(8) notwithstanding, the general overtime provision under section 3(B)(1) entitles Lancaster's nurses to time-and-a-half pay for every hour worked beyond their regularly scheduled alternative workweek schedule.

### I. *Standard of Review*

■ As quasi-legislative regulations, wage orders are to be construed in accordance with the ordinary principles of statutory interpretation. (*Collins v. Overnite Transportation Co.* (2003) 105 Cal.App.4th 171, 178–179 [129 Cal.Rptr.2d 254].) ■ "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law." (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) To determine the intent, the court turns first to the words, attempting to give effect to the usual, ordinary import of the language and to avoid making any language mere surplusage. (*Brewer v. Patel* (1993) 20 Cal.App.4th 1017, 1021 [25 Cal.Rptr.2d 65]; *Regents of University of California v. Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 607 [224 Cal.Rptr. 631, 715 P.2d 590].) When the language is clear, we must apply that language without further interpretation. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 800 [268 Cal.Rptr. 753, 789 P.2d 934].) "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' " (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].)

---

least the greater part of Plaintiff's class action hinges upon this determination. According to Plaintiffs, there are other pending actions that involve the same issue, and there could be other California employees with similar claims. Appellate resolution of the issue presented could help avoid unnecessary litigation, or could pave the way for other aggrieved employees to recover unpaid overtime. Healthcare employers, too, are uncertain whether their overtime policies comply with California law. [¶] Therefore, appellate review of this issue is appropriate at this time."

We grant Singh's subsequent request for judicial notice: depositions of Bill Dombrowski and Barry Broad in *Hamilton v. Memorial Health Services* (Super. Ct. L.A. County, 2005, No. BC322076); notices of public hearing of the IWC for the May 26 and June 30, 2000 public hearings; transcript and minutes of public hearing of the IWC dated May 26, 2000; transcripts and minutes of public hearing of the IWC dated June 30, 2000; proposal of IWC Chair Bill Dombrowski at the May 26 and June 30, 2000 public hearings of the IWC; decision of the superior court recommending appellate review pursuant to Code of Civil Procedure section 166.1.

■ Only when the statutory language is ambiguous and susceptible of more than one reasonable interpretation do "we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].)

■ Furthermore, we must select a construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].) "And, wherever possible, 'we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute.' [Citation.]" (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 193 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

## II. *REGULATORY HISTORY*

■ Pursuant to constitutional and statutory authority, the Industrial Welfare Commission (IWC) is empowered to promulgate administrative regulations known as "wage orders" to regulate wages, work hours, and working conditions with respect to various industries and occupations. (See Cal. Const., art. XIV, § 1; Lab. Code, §§ 70–74, 1173, 1178, 1178.5, 1182; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575 [94 Cal.Rptr.2d 3, 995 P.2d 139] (*Morillion*); *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561–562 [59 Cal.Rptr.2d 186, 927 P.2d 296].) The Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE) enforces the state's labor laws, including the IWC wage orders. (See Lab. Code, §§ 61, 95, 98–98.8, 1193.5; *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at pp. 561–562.)

" 'IWC has promulgated 15 [industry and occupation wage] orders—12 orders cover specific industries and 3 orders cover occupations—and 1 general minimum wage order which applies to all California employers and employees (excluding public employees and outside salesmen). [Citations.]' (*Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 29 [273 Cal.Rptr. 615] (*Monzon*).)" (*Morillion, supra,* 22 Cal.4th at p. 581.) Wage Order 5 governs the "Public Housekeeping Industry," which includes

"[h]ospitals, sanitariums, rest homes, child nurseries, child care institutions, homes for the aged, and similar establishments offering board or lodging in addition to medical, surgical, nursing, convalescent, aged, or child care." (Cal. Code Regs., tit. 8, § 11050, subd. 2(P)(4).)

### A. *From 1986 to 1993, Former Wage Orders Provided Premium Pay for Hours 37–40 under a 3/12 Alternative Workweek Schedule*

Former Wage Order 5-80 permitted employers to establish a regularly scheduled workweek of "not more than four (4) working days of not more than ten (10) hours each" (4/10) with a structure for paying premium wage rates for excess hours and days worked.[4] (Former Cal. Code Regs., tit. 8, § 11050, subd. 3(B), Register 84, No. 23 (Jun. 9, 1984) p. 774.)

In 1986, the IWC amended former Wage Order 5-80 and extended the policy to a 3/12 regularly scheduled workweek for hospital workers for the first time. (Former Cal. Code Regs., tit. 8, § 11050, subd. 3(K)(1)(a)–(b), Register 86, No. 12 (Mar. 22, 1986) p. 776.) The amendment entitled hospital workers on the 3/12 schedule to time-and-a-half pay for the first eight hours of an additional workday, as well as double pay for all excess hours thereafter.[5] (*Ibid.*)

---

[4] Former Wage Order 5-80 provided: "(B) No employer shall be deemed to have violated the provisions of the above subsection (A) [Hours and Days of Work] by instituting, pursuant to a written agreement voluntarily executed by the employer and at least two-thirds (2/3) of the affected employees before the performance of the work, a regularly scheduled week of work which includes not more than four (4) working days of not more than ten (10) hours each so long as the employee receives at least two (2) consecutive days off within each workweek, provided that: [¶] (1) The employer is not required to pay the premium wage rate prescribed in subsection (A) for the 9th and 10th hours worked during such workdays; [¶] (2) If an employee on such a four-day schedule is required or permitted to work more than ten (10) hours in any workday, the premium wage rate provisions . . . shall apply to such employee for those hours worked in excess of the 10th hour of that workday; [¶] (3) Any employee on such a schedule who is required or permitted to work on more than four (4) workdays shall be compensated at the rate of not less than one and one-half (1 1/2) times the employee's regular rate of pay for the first eight (8) hours on such additional workdays. . . . " (Former Cal. Code Regs., tit. 8, § 11050, subd. 3(B)(1)–(3), Register 84, No. 23 (Jun. 9, 1984) p. 774.)

[5] As amended in 1986, former Wage Order 5-80 provided: "(K) No employer engaged in the operation of a licensed hospital shall be deemed to have violated this Section 3, Hours and Days of Work, by instituting, pursuant to a written agreement voluntarily executed by the employer and by at least two-thirds (2/3) of the employees in the affected hospital work unit following a secret ballot and before the performance of the work, a regularly scheduled week of work that includes either: [¶] (1) no more than three (3) working days of no more than twelve (12) hours each within any workweek or [¶] no more than five (5) working days of no more than nine (9) hours each within any workweek, provided that the employer shall be required to pay the premium wage rate prescribed in subdivision (A) of Section (3) [Hours and Days of Work], above, for all hours in excess of forty (40) hours in any such workweek, and, provided further that: [¶] (a) If an employee on a schedule covered by this subsection (K) is

In 1989, the IWC adopted former Wage Order 5-89, which continued the entitlement of health care employees on a 3/12 schedule to time-and-a-half pay for the first eight hours of an additional workday and double pay for all excess hours thereafter.[6] (Former Cal. Code of Regs., tit. 8, § 11050, subd. 3(K)(1)(a)–(b), Register 89, No. 10 (Mar. 11, 1989) p. 777.)

B. *The 1993 Amendment Repealed the Earlier Regulatory Provisions Providing Premium Pay for Hours 37–40 Under a 3/12 Alternative Workweek Schedule*

In 1993, the IWC repealed the language in section 3(K) of former Wage Order 5-89 and added new language with respect to the "health care industry." (Former Cal. Code Regs., tit. 8, § 11050, subd. 3(K)(1)–(2), Register 93, No. 32 (Aug. 6, 1993) p. 1305.) Under the new provision, overtime pay for hours 37 to 40 under the 3/12 alternative workweek was eliminated. Health care workers on a 3/12 alternative workweek schedule could receive time-and-a-half pay only when they had worked 40 hours in a workweek.[7] (*Ibid.*) The language in the 1993 amendment is similar to that used in section 3(B)(8) of current Wage Order 5.

C. *The Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 Nullified the Former Wage Orders*

In 1999, the Legislature enacted the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999, commonly known as Assembly Bill

---

required or permitted to work hours in any one workday in excess of the number of hours specifically agreed to in the written agreement, such excess hours in such regularly scheduled workday shall be compensated at the rate of time and one-half (1 1/2) the employee's regular rate of pay up to a total of twelve (12) hours, and double the employee's regular rate of pay up to a total of twelve (12) hours in such regularly scheduled workday. [¶] (b) Any employee on a schedule covered by this subsection required or permitted to work in excess of the number of workdays specifically agreed to in the written agreement, shall be compensated at the rate of one and one-half (1 1/2) times the employee's regular rate of pay for the first eight (8) hours of such additional workday and double the employee's regular rate of pay for all hours in excess of eight (8) hours of such additional workday." (Former Cal. Code Regs., tit. 8, § 11050, subd. 3(K)(1)(a)–(b), Register 86, No. 12 (Mar. 22, 1986) p. 776.)

[6] On provisions governing the 3/12 alternative workweek schedule, former Wage Order 5-89 adopted the language contained in former Wage Order 5-80, as amended in 1986. (Former Cal. Code of Regs., tit. 8, § 11050, subd. 3(K)(1)(a)–(b), Register 89, No. 10 (Mar. 11, 1989) p. 777; cf. former Cal. Code Regs., tit. 8, § 11050, subd. 3(K)(1)(a)–(b), Register 86, No. 12 (Mar. 22, 1986) p. 776.)

[7] The 1993 amendment to former Wage Order 5-89 provided: "(1) An employee who works beyond twelve (12) hours in a workday shall be compensated at double the employee's regular rate of pay for all hours in excess of twelve (12); (2) An employee who works in excess of forty (40) hours in a workweek shall be compensated at one and one-half (1 1/2) times the employee's regular rate of pay for all hours over forty (40) in the workweek." (Former Cal. Code Regs., tit. 8, § 11050, subd. 3(K)(1)–(2), Register 93, No. 32 (Aug. 6, 1993) p. 1305.)

No. 60 (1999–2000 Reg. Sess.), to "uphold[] the eight-hour workday as a fundamental protection for working people." (Stats. 1999, ch. 134, § 1(g).) The statute added Labor Code section 510, which provided for time-and-a-half pay for, among other configurations, any work in excess of 40 hours in one workweek.[8] (Lab. Code, § 510.) It also added Labor Code section 511, which authorized the adoption of alternative workweek schedules "for no longer than 10 hours per day within a 40-hour workweek," and provided time-and-a-half pay for hours in excess of either the regularly scheduled hours or 40 hours per week.[9] (Lab. Code, § 511, subds. (a)–(b).)

Assembly Bill No. 60 (1999–2000 Reg. Sess.) also added Labor Code section 517, which directed the IWC to review wage, hour and working conditions in the health care and other enumerated industries prior to July 1, 2000.[10] (Lab. Code, § 517, subds. (a)–(b).) Notwithstanding the limitations

---

[8] Labor Code section 510, subdivision (a), provides: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work . . . ."

[9] Labor Code section 511, subdivision (b), provides: "An affected employee working longer than eight hours but not more than 12 hours in a day pursuant to an alternative workweek schedule adopted pursuant to this section shall be paid an overtime rate of compensation of no less than one and one-half times the regular rate of pay of the employee for any work in excess of the regularly scheduled hours established by the alternative workweek agreement and for any work in excess of 40 hours per week. An overtime rate of compensation of no less than double the regular rate of pay of the employee shall be paid for any work in excess of 12 hours per day and for any work in excess of eight hours on those days worked beyond the regularly scheduled workdays established by the alternative workweek agreement. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work." (Lab. Code, § 511, subd. (b).)

[10] Labor Code section 517 provides: "(a) The Industrial Welfare Commission shall, at a public hearing to be concluded by July 1, 2000, adopt wage, hours, and working conditions orders consistent with this chapter without convening wage boards, which orders shall be final and conclusive for all purposes. These orders shall include regulations necessary to provide assurances of fairness regarding the conduct of employee workweek elections, procedures for employees to petition for and obtain elections to repeal alternative workweek schedules, procedures for implementation of those schedules, conditions under which an adopted alternative workweek schedule can be repealed by the employer, employee disclosures, designations of work, and processing of workweek election petitions pursuant to Parts 2 and 4 of this division and in any wage order of the commission and such other regulations as may be needed to fulfill the duties of the commission pursuant to this part. [¶] (b) Prior to July 1, 2000, the Industrial Welfare Commission shall conduct a review of wages, hours, and working conditions in the ski industry, commercial fishing industry, and health care industry, and for

on overtime under Labor Code sections 510 and 511, the Legislature directed the IWC to issue new wage orders, including regulations on alternative workweek schedules for the health care and other enumerated industries, which "shall be final and conclusive for all purposes." (Lab. Code, § 517, subd. (a).) Assembly Bill No. 60 further rendered "null and void" various IWC wage orders, including former Wage Order 5-89 and its 1993 amendment until the effective date of new wage orders issued in accordance with Labor Code section 517. (Stats. 1999, ch. 134, § 21.)

### D. In Promulgating Current Wage Order 5, the IWC Elected to Not Adopt Premium Pay for Hours 37 to 40 in a 3/12 Alternative Workweek

The IWC held public hearings pursuant to Labor Code section 517. At its May 26, 2000 public hearing, IWC Commissioner Barry Broad proposed the following amendment: "All hours worked in excess of 36 hours in a workweek shall be compensated at a rate of not less than one and a half times the employee's regular rate of pay and all hours worked in excess of 12 hours in a day or in excess of 8 hours on any workday beyond three days in any workweek shall be compensated at a rate of twice the employee's regular rate of pay." (IWC, Minutes of Sacramento Public Hearing, May 26, 2000, p. 1.) With this motion, the IWC was presented the opportunity to adopt provisions that would have effectively reinstated the principles of the repealed pre-1993 Wage Orders that authorized premium pay for hours 37 to 40 in a 3/12 alternative workweek schedule. The IWC elected not to consider that proposal and the motion died for want of a second. (*Ibid.*) The proposed language was not adopted when the IWC later promulgated Wage Order 5-2001. (Cal. Code Regs., tit. 8, § 11050, Register 2002, No. 16 (Apr. 19, 2002) pp. 1315–1316.6.)

### III. THE TRIAL COURT CORRECTLY RULED THAT SECTION 3(B)(8) REGULATES OVERTIME PAY FOR HEALTH CARE EMPLOYEES on A 3/12 ALTERNATIVE WORKWEEK SCHEDULE

#### A. The Plain Language of Wage Order 5 Supports the Trial Court's Determination

At issue is the current Wage Order 5, effective 2001, which regulates wages, hours and working conditions in the "Public Housekeeping Industry,"

---

stable employees in the horseracing industry. Notwithstanding subdivision (a) and Sections 510 and 511, and consistent with its duty to protect the health, safety, and welfare of workers pursuant to Section 1173, the commission may, based upon this review, convene a public hearing to adopt or modify regulations at that hearing pertaining to the industries herein, without convening wage boards. Any hearing conducted pursuant to this subdivision shall be concluded not later than July 1, 2000." (Lab. Code, § 517, subds. (a)-(b).)

including "[h]ospitals, sanitariums, rest homes, child nurseries, child care institutions, homes for the aged, and similar establishments offering board or lodging in addition to medical, surgical, nursing, convalescent, aged, or child care." (Cal. Code Regs., tit. 8, § 11050, subd. 2(P)(4).)

In current Wage Order 5, section 3(B)(1) mirrors the 4/10 alternative workweek schedule language under Labor Code section 511. Section 3(B)(1) provides: "No employer shall be deemed to have violated the daily overtime provisions by instituting, pursuant to the election procedures set forth in this wage order, a regularly scheduled alternative workweek schedule of not more than ten (10) hours per day within a 40 hour workweek without the payment of an overtime rate of compensation. All work performed in any workday beyond the schedule established by the agreement up to 12 hours a day or beyond 40 hours per week shall be paid at one and one-half (1 1/2) times the employee's regular rate of pay. All work performed in excess of 12 hours per day and any work in excess of eight (8) hours on those days worked beyond the regularly scheduled number of workdays established by the alternative workweek agreement shall be paid at double the employee's regular rate of pay. Any alternative workweek agreement adopted pursuant to this section shall provide for not less than four (4) hours of work in any shift. Nothing in this section shall prohibit an employer, at the request of the employee, to substitute one day of work for another day of the same length in the shift provided by the alternative workweek agreement on an occasional basis to meet the personal needs of the employee without the payment of overtime. No hours paid at either one and one-half (1 1/2) or double the regular rate of pay shall be included in determining when 40 hours have been worked for the purpose of computing overtime compensation." (Cal. Code Regs., tit. 8, § 11050, subd. 3(B)(1).)

In the same Wage Order, section 3(B)(8), specific to health care employees on a 3/12 alternative workweek schedule, was promulgated pursuant to Labor Code section 517. It provides: "Notwithstanding the above provisions regarding alternative workweek schedules, no employer of employees in the health care industry shall be deemed to have violated the daily overtime provisions by instituting, pursuant to the election procedures set forth in this wage order a regularly scheduled alternative workweek schedule that includes work days exceeding ten (10) hours but not more than 12 hours within a 40 hour workweek without the payment of overtime compensation, provided that: [¶] (a) An employee who works beyond 12 hours in a workday shall be compensated at double the employee's regular rate of pay for all hours in excess of (12); [¶] (b) An employee who works in excess of 40 hours in a workweek shall be compensated at one and one-half (1 1/2) times the

employee's regular rate of pay for all hours over 40 hours in the workweek; [¶] (c) Any alternative workweek agreement adopted pursuant to this section shall provide for not less than four (4) hours of work in any shift; [¶] (d) The same overtime standards shall apply to employees who are temporarily assigned to a work unit covered by this subsection; [¶] (e) Any employer who instituted an alternative workweek schedule pursuant to this subsection shall make a reasonable effort to find another work assignment for any employee who participated in a valid election prior to 1998 pursuant to the provisions of Wage Orders 4 and 5 and who is unable to work the alternative workweek schedule established; [¶] (f) An employer engaged in the operation of a licensed hospital or in providing personnel for the operation of a licensed hospital who institutes, pursuant to a valid order of the Commission, a regularly scheduled alternative workweek that includes no more than three (3) 12-hour workdays, shall make a reasonable effort to find another work assignment for any employee who participated in the vote which authorized the schedule and is unable to work the 12-hour shifts. An employer shall not be required to offer a different work assignment to an employee if such a work assignment is not available or if the employee was hired after the adoption of the 12 hour, three (3) day alternative workweek schedule." (Cal. Code Regs., tit. 8, § 11050, subd. 3(B)(8).)

■ " 'When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning.' (*People v. Trevino* (2001) 26 Cal.4th 237, 242 [109 Cal.Rptr.2d 567, 27 P.3d 283]; see *People v. Gardeley* (1996) 14 Cal.4th 605, 621–622 [59 Cal.Rptr.2d 356, 927 P.2d 713].)" (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 717–718 [36 Cal.Rptr.3d 814, 124 P.3d 408].) Here, section 3(B)(1) in referring to the trigger for time-and-a-half pay, speaks both of work beyond the schedule and work beyond 40 hours per week; section 3(B)(8) provides for such pay only where the employee works more than 40 hours in the workweek. (Cal. Code Regs., tit. 8, § 11050, subd. 3(B)(1) and (8)(b).) Reading the two provisions together, and mindful of the rule of construction that significant differences in language imply a difference in meaning, it is reasonable to conclude that the IWC intended a different result for 12-hour alternative schedules.

■ Moreover, it is a cardinal rule of statutory interpretation that specific statutory regulations control over the general statutes (see *Rose v. State of California* (1942) 19 Cal.2d 713, 723–724 [123 P.2d 505]; *Bozaich v. State of California* (1973) 32 Cal.App.3d 688, 697 [108 Cal.Rptr. 392]; *Steilberg v.*

*Lackner* (1977) 69 Cal.App.3d 780, 788 [138 Cal.Rptr. 378]). ■ The more specific provisions of section 3(B)(8), applicable to the 3/12 alternative workweek schedule in the health care industry, are necessarily controlling over the general provisions of section 3(B)(1), applicable to the alternative workweek schedule based on a 10-hour day in the public housekeeping industry.

The language under Wage Order 5 is clear and unambiguous. Consistent with the directive under Assembly Bill No. 60 (1999–2000 Reg. Sess.), "[n]otwithstanding" other provisions regarding alternative workweek schedules, section 3(B)(8) was made applicable to employees in the health care industry where time-and-a-half pay is required when work is performed beyond 40 hours in a workweek under a 3/12 alternative workweek schedule.

B. *The IWC Knew About Existing and Prior Wage Orders at the Time it Adopted Current Wage Order 5*

■ The Legislature is presumed to know existing law at the time it enacts a statute (*Yoffie v. Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 748 [238 Cal.Rptr. 502]). At the time it enacted Assembly Bill No. 60 (1999–2000 Reg. Sess.), the Legislature expressly repealed former Wage Order 5-89, which provided for time-and-a-half pay for the first eight hours worked on an unscheduled day in a 3/12 alternative workweek schedule. It did not then or at any time thereafter enact statutory language to provide otherwise. Assembly Bill No. 60 further added Labor Code section 510 on general overtime pay and Labor Code section 511 on the 4/10 alternative workweek schedule. However, the Legislature separately added Labor Code section 517, which directed the IWC to review wage, hour and working conditions in the health care and other enumerated industries prior to July 1, 2000. (Lab. Code, § 517, subds. (a)–(b).)

Notwithstanding the limitations on overtime under Labor Code sections 510 and 511, the Legislature expressly directed the IWC to issue new wage orders, including regulations on alternative workweek schedules for the health care and other enumerated industries, which "shall be final and conclusive for all purposes." (Lab. Code, § 517, subd. (a).) Pursuant to Labor Code section 517, the IWC promulgated the current section 3(B)(8), which plainly provides for overtime pay only beyond 40 hours worked in a 3/12 alternative workweek schedule.

As recorded in the public hearing minutes, the IWC had noticed on its agenda the option of reinstating pre-1993 premium pay for work beyond a 3/12 alternative workweek schedule, but did not adopt the proposed language. Instead, in promulgating section 3(B)(8) of current Wage Order 5, the IWC elected to continue the post-1993 policy of compensating workers at time-and-a-half pay only after 40 hours of labor.

### C. *The Plain Language of Wage Order 5 Is Uncontradicted by Case Law*

Singh's reliance on *Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893 [32 Cal.Rptr.3d 373] (*Huntington*) is misplaced. *Huntington* only made reference to the fact that section 3(B)(1) applies generally to health care employers and that section 3(B)(8) permits a longer nonovertime workday in the health care industry. (*Id.* at p. 909.) Nothing in the opinion held the two sections should not be read independently. More-over, the issue in *Huntington* concerned whether the health care employer engaged in a subterfuge or artifice that was designed to evade the overtime laws by using a short-shift differential, where a 12-hour nurse worked fewer than 10 hours in one day and received extra pay for the time worked. (*Id.* at pp. 905, 910–911.) Short-shift differentials are regulated under section 3(B)(2),[11] a provision not in conflict with section 3(B)(8). *Huntington*, therefore, is not dispositive on the issue before us.[12]

 Accordingly, the plain meaning of Wage Order 5 makes clear that section 3(B)(8) controls overtime pay for health care employees working a 3/12 alternative workweek schedule.

---

[11] "If an employer whose employees have adopted an alternative workweek agreement permitted by this order requires an employee to work fewer hours than those that are regularly scheduled by the agreement, the employer shall pay the employee overtime compensation at a rate of one and one-half (1 1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours, and double the employee's regular rate of pay for all hours worked in excess of 12 hours for the day the employee is required to work the reduced hours." (Cal. Code Regs., tit. 8, § 11050, subd. 3(B)(2).)

[12] Likewise, Singh's citation to *Mitchell v. Yoplait* (2004) 122 Cal.App.4th Supp. 8 [19 Cal.Rptr.3d 267] (*Mitchell*) is not instructive. First, *Mitchell* concerned warehouse rather than health care industry workers, the industry at issue here. (*Id.* at p. Supp. 9.) Second, the case turned on the interpretation of Labor Code section 511 governing the 4/10 alternative workweek, which is not at issue here, and did not address the issue we confront. (*Mitchell*, at p. Supp. 11.) Third, "although decisions of the appellate department have persuasive value, they are 'of debatable strength as precedents,' and 'are not, of course, binding on . . . the higher reviewing courts . . . .' [Citation.]" (*Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 782, fn. 9 [183 Cal.Rptr. 846, 647 P.2d 122].)

## DISPOSITION

The petition for writ of mandate is denied. Real parties in interest shall recover their costs of petition from petitioner.

Perluss, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied July 7, 2006, and petitioner's petition for review by the Supreme Court was denied September 13, 2006, S145234.