**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JASON CAMPBELL; SARAH SOBEK;
et al.,

   *Plaintiffs-Appellees,*

v.

PRICEWATERHOUSECOOPERS, LLP,
   *Defendant-Appellant.*

No. 09-16370

D.C. No.
2:06-cv-02376-
LKK-GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
February 15, 2011—San Francisco, California

Filed June 15, 2011

Before: Richard A. Paez* and Richard C. Tallman, Circuit
Judges, and Arthur J. Tarnow, Senior District Judge.**

Opinion by Judge Tallman

---

*Due to the death of the Honorable David R. Thompson, the Honorable
Richard A. Paez, United States Circuit Judge for the Ninth Circuit, was
drawn to replace him. Judge Paez has read the briefs, reviewed the record,
and listened to the audio recording of oral argument held on February 15,
2011.

**The Honorable Arthur J. Tarnow, Senior United States District Judge
for the Eastern District of Michigan, sitting by designation.

**COUNSEL**

Norman C. Hile, Julie A. Totten, David A. Prahl, Sacramento, California, Daniel J. Thomasch (argued), New York, New York, Lynne C. Hermle, Menlo Park, California, Orrick, Herrington & Sutcliffe LLP, for defendant-appellant PricewaterhouseCoopers LLP.

William A. Kershaw, Lyle W. Cook, Stuart C. Talley, Kershaw, Cutter & Ratinoff, LLP, Sacramento, California, David C. Frederick (argued), Silvija A. Strikis, Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, for plaintiffs-appellees Jason Campbell, Sarah Sobek, et al.

---

**OPINION**

TALLMAN, Circuit Judge:

Two-thousand unlicensed junior accountants brought this wage-and-hour class action against their employer, PricewaterhouseCoopers LLP (PwC). Among other things, the accountants claim PwC failed to pay them mandatory overtime under California law. The district court granted partial summary judgment to the accountants, finding as a matter of law that PwC could not exempt them from California's overtime requirements. PwC filed this interlocutory appeal.

We must decide whether unlicensed accountants in California are categorically ineligible, as a matter of law, to fall under two state regulatory exemptions from mandatory overtime: the professional exemption and the administrative exemption. We hold they are not. Because the district court erroneously rejected triable defenses under both exemptions at summary judgment, we reverse.

# I

## A[1]

PwC is an international accounting and professional-services firm. PwC is colloquially known as one of the "Big Four" accounting firms,[2] employing over 30,000 people in the United States. PwC maintains six California offices, in Irvine, Los Angeles, Sacramento, San Diego, San Francisco, and San Jose.

PwC's professional services are divided into three lines: Assurance, Tax, and Advisory. The Assurance division is further divided into three subdivisions: Attest, Systems Process Assurance, and Transactions. Within the Attest division, there are seven tiers of personnel job titles. From top to bottom, those tiers are: partner, managing director, director, senior manager, manager, senior associate, and associate. Employees in the first five tiers are required to hold Certified Public

---

[1]In the district court, the parties agreed to a stipulated protective order allowing them to designate certain material as "Confidential" or "Highly Confidential" and file it under seal. PwC then successfully moved to seal much of the summary-judgment evidence, arguing it could reveal PwC's confidential business strategies and other commercially sensitive information. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (explaining that courts are authorized to seal "business information that might harm a litigant's competitive standing"). Following suit in this appeal, the class plaintiffs filed their answering brief and record materials under seal. PwC did not file its briefs or record materials under seal.

We are mindful of PwC's interest in protecting its proprietary business information. However, the sealed documents contain extensive non-confidential information, despite the protective order's exhortation that "[w]here possible, only Confidential or Highly Confidential portions . . . shall be lodged under seal." Thus, to the extent our opinion references non-confidential portions of the sealed documents as necessary for our legal analysis, we order those documents unsealed to that limited extent.

[2]The other three "Big Four" firms are Deloitte, Ernst & Young, and KPMG.

Accountant (CPA) licenses, but senior associates and associates need not be licensed.

Jason Campbell and Sarah Sobek represent a class of junior accountants (collectively Plaintiffs) currently or formerly employed by PwC. Plaintiffs now work or previously worked in PwC's six California offices as associates in the Attest division. They do not or did not then have CPA licenses. The class includes approximately 2,000 members.

As Attest associates, Plaintiffs help perform audits for PwC's many clients. These audits ensure the client's financial statements are prepared in accordance with Generally Accepted Accounting Principles (GAAP). The ultimate recipient of PwC's audit work is the client's Board of Directors. In addition to verifying compliance with GAAP, the Attest division also provides professional advice to clients, including identification of deficiencies in the client's accounting practices.

PwC refers to the auditing of a particular client as an "engagement." The team working on an engagement does not persist from project to project. During any particular engagement, an associate or senior associate may be designated as the "in charge," a designation that does not last beyond that engagement. Some Plaintiffs have performed this function. The associate "in charge" reports to the manager and helps manage the day-to-day activities of the engagement.

Plaintiffs and PwC disagree sharply about the nature of Plaintiffs' work during an engagement. Plaintiffs claim their work is predominately routinized and menial. They argue that strict instructions, comprehensive computer auditing software, and an extensive work-review system all preclude them from exercising any significant degree of discretionary judgment or analytical thinking. Named-plaintiff Sobek described her work as "comparing one number to another number to see if they agree. . . . a very tedious activity." Plaintiffs also charac-

terize their responsibilities as "sitting at [a] computer, going through highly routinized and nondiscretionary Steps."

PwC, on the other hand, argues Plaintiffs perform analytical work "integral" to PwC's Attest services. To the extent Plaintiffs do not regularly exercise discretion and independent judgment during an audit engagement, PwC says they are failing to meet the firm's expectations. PwC emphasizes the variety of duties performed by Plaintiffs during an engagement and claims the failure to perform those tasks adequately can have "significant consequences" for PwC's clients. During one engagement, for example, named-plaintiff Campbell overlooked approximately $500,000 in the client's unrecorded liabilities. This oversight, which Campbell himself described as a "serious error," was ultimately discovered by another team member. The error required a late financial adjustment and made the client unhappy.

While working for PwC, Campbell and Sobek each received some criticism over their job performance. In addition to the mistake described above, Campbell earned a "Less Than Expected" rating during his 2006 annual performance review. Sobek received the same rating during her 2005 review. More generally, PwC alleges both named-plaintiffs consistently fell below the firm's expectations for Attest associates.

Campbell was terminated by PwC in 2006 for poor performance. Sobek resigned from the firm that same year. They brought this diversity action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), alleging various violations by PwC of California wage-and-hour laws.

**B**

Under the California Labor Code, employers must generally pay mandatory overtime to any employee who works more than eight hours a day or forty hours a week. Cal. Lab.

Code § 510(a). However, the Industrial Welfare Commission (IWC), a California state agency, may promulgate exemptions from mandatory overtime. *Id.* § 515(a). The IWC promulgates these exemptions in "wage orders," state regulations enforced by the California Division of Labor Standards and Enforcement (DLSE).[3] The current IWC wage order is Wage Order No. 4-2001 (the 2001 Wage Order), codified at California Code of Regulations title 8, section 11040. The 2001 Wage Order establishes three overtime exemptions: the professional exemption, the executive exemption, and the administrative exemption. Cal. Code Regs. tit. 8, § 11040(1)(A)(1)-(3).

In the district court, the parties cross-moved for partial summary judgment on whether Plaintiffs fell under any of these three overtime exemptions. The district court ruled for Plaintiffs, finding as a matter of law that PwC could not exempt them under the 2001 Wage Order. *Campbell v. PricewaterhouseCoopers, LLP*, 602 F. Supp. 2d 1163, 1185 (E.D. Cal. 2009). In relevant part, the court concluded that (1) unlicensed accountants are categorically ineligible for the professional exemption, *id.* at 1180-81; and (2) PwC had not established a triable fact issue on whether Plaintiffs' work was performed "under only general supervision," an essential element of the administrative exemption, *id.* at 1182-85.[4] Recognizing the importance of the exemption issue to this litigation, the court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b). *Id.* at 1186. We granted certification, and PwC now appeals.

---

[3]Both parties ask us to take judicial notice of certain extrinsic materials, including DLSE manuals, IWC basis statements, and former federal regulations. The parties cited these same materials to make similar arguments before the district court. To the extent our opinion references any of the materials, we grant the parties' requests for judicial notice. *See* Fed. R. Evid. 201(b) (establishing that judicial notice is appropriate for facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

[4]The district court also found for Plaintiffs on the executive exemption. *Id.* at 1181. PwC does not appeal that decision.

## II

We review *de novo* a district court's decision on cross-motions for summary judgment. *Avery v. First Resolution Mgmt. Corp.*, 568 F.3d 1018, 1021 (9th Cir. 2009). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine questions of material fact and the district court correctly applied the underlying substantive law. *Id.*

In California, overtime exemption is an affirmative defense that must be pled and proved by the employer. *Ramirez v. Yosemite Water Co.*, 978 P.2d 2, 8 (Cal. 1999). To defeat summary judgment, the employer must establish a material fact question on each essential element of the defense. *See* Fed. R. Civ. P. 56(a), (e)(3).

## III

We begin with the professional exemption. The district court found that unlicensed accountants are categorically ineligible for the exemption as a matter of law, and thus Plaintiffs cannot fall under the exemption because they are not licensed CPAs. This conclusion is contrary to the exemption's text and structure and would produce highly problematic precedent affecting several non-accounting professions. For that reason, we tread carefully in our analysis of the issue.

IWC wage orders are "quasi-legislative regulations" that must be construed "in accordance with the ordinary principles of statutory interpretation."[5] *Singh v. Superior Court*, 44 Cal. Rptr. 3d 348, 351 (Cal. Ct. App. 2006). When interpreting a statute, our goal is to ascertain the intent of the enacting legislative body. *Martinez v. Combs*, 231 P.3d 259, 268 (Cal. 2010).

---

[5]Given this rule, we will occasionally refer to the 2001 Wage Order as a "statute," even though it is actually a regulation.

**[1]** The district court appropriately focused its statutory analysis on the first two subsections of the 2001 Wage Order's professional exemption. Those two subsections provide:

> (3) Professional Exemption[:] A person employed in a professional capacity means any employee who meets all of the following requirements:
>
>> (a) Who is licensed or certified by the State of California and is primarily engaged in the practice of one of the following recognized professions: law, medicine, dentistry, optometry, architecture, engineering, teaching, or accounting; *or*
>>
>> (b) Who is primarily engaged in an occupation commonly recognized as a learned or artistic profession.
>
> [additional requirements] . . . .

Cal. Code Regs. tit. 8, § 11040(1)(A)(3) (emphasis added). The district court's analysis essentially hinged on one simple question: did the IWC intend subsection (a) to be the only provision through which accountants may be exempt? *See Campbell*, 602 F. Supp. 2d at 1172, 1179-81. In other words, can *unlicensed* accountants be exempt under subsection (b) even though subsection (a) enumerates accounting as a profession and expressly requires licensure in California? This is an issue of first impression under California law.

Applying principles of statutory interpretation, the district court concluded that only subsection (a) covers accountants. *Id.* at 1180-81. Thus, according to the district court, unlicensed accountants like Plaintiffs are entirely ineligible for the professional exemption. They cannot fall under subsection (a) because they are not licensed, and they cannot fall under

subsection (b) because (a) is the sole provision covering accountants.

We address the same question *de novo*. To do so, we turn to "ordinary principles of statutory interpretation." *Singh*, 44 Cal. Rptr. 3d at 351.

## A

As always, our interpretation begins with the text of the statute. *Martinez*, 231 P.3d at 268; *see also Jimenez v. Quarterman*, 129 S. Ct. 681, 685 (2009). The statute's words must be assigned their "usual and ordinary meanings" and evaluated in context. *Martinez*, 231 P.3d at 268. If this plain meaning is unambiguous, the inquiry ends there and we need not consider further interpretive aids (e.g., drafting history). *Id.* The plain meaning governs. *Id.*

**[2]** Here, we need not go beyond this first step. The professional exemption's language is unambiguous. The exemption plainly allows accountants to fall under subsection (b), subject to meeting the specific requirements of that subsection.

From the outset, the language of the professional exemption indicates no intent to exclude all accountants from subsection (b). The introductory clause provides that the exemption applies to "*any employee*" who satisfies subsection (a) "*or*" subsection (b) (in addition to several other requirements not at issue here). § 11040(1)(A)(3) (emphasis added). This language tells us two things.

**[3]** First, the exemption frames its application in terms of individual employees, rather than whole professions. This undercuts Plaintiffs' argument that the IWC contemplated excluding the entire accounting profession from subsection (b).

**[4]** Second, the "usual and ordinary" meaning of the words "any employee" and "or" is highly inclusive. This inclusive

introductory language defines the baseline relationship between subsections (a) and (b): any given employee may potentially fall under either subsection, provided he or she meets the specific requirements of that subsection. This language does not even hint that the entire accounting profession might be categorically ineligible for subsection (b). If the exemption imposes that limitation, it must do so in some later language within the text of the subsections.

We see no such language. Subsection (a) says nothing about whether employees in its eight enumerated professions (including accounting) may fall under subsection (b). Subsection (b) itself limits its application to any employee who is "primarily engaged in an occupation commonly recognized as a learned or artistic profession." § 11040(1)(A)(3)(b). The subsection then goes on to define several benchmarks of "learned" and "artistic" professions—e.g., the work must be "predominately intellectual and varied in character." § 11040(1)(A)(3)(b)(i)-(iii).

**[5]** But subsection (b) does not contain any language excluding accounting or any other specific profession. In fact, subsection (b) does not mention specific professions at all. While subsection (b) is obviously designed to prevent many employees from falling under its gambit, it does so by establishing the contours of "learned" and "artistic" professions, not by categorically excluding whole professions outright. This is entirely consistent with the IWC's directive that application of subsection (b) depends on an employee's actual job duties, not the employee's job title or professional field. 29 C.F.R. § 541.308 (2001) (incorporated by § 11040(1)(A)(3)(e)).

Instead of pointing to any actual language that would exclude all accountants from subsection (b), Plaintiffs claim the exemption's overall structure requires that interpretation. Specifically, Plaintiffs argue the exemption contemplates three exclusive categories of employees: (1) the enumerated

professions in subsection (a), including accounting; (2) "learned" professions under subsection (b); and (3) "artistic" professions under subsection (b). Because accountants are enumerated in (a), Plaintiffs claim they cannot also be "learned" or "artistic" under (b).

Although Plaintiffs are apparently correct that the exemption contemplates three categories of employees, nothing in the exemption's text or structure suggests all three categories are exclusive. The latter two categories—learned professions and artistic professions—appear to be exclusive from *each other*, but this is because the two both appear in subsection (b) and are defined differently. *See* § 11040(1)(A)(3)(b)(i)-(ii). This does not mean, however, that learned or artistic professions are exclusive from the enumerated professions in subsection (a). In other words, we reject Plaintiffs' argument that exclusivity between the second and third categories implies exclusivity between the first category and the latter two. We see nothing in the text or structure indicating that enumerated professions (subsection (a)) cannot in some instances also be either learned or artistic professions (subsection (b)).

In fact, the structure of the professional exemption strongly suggests the IWC intended for subsection (b) to cover some accountants. A later subsection, subsection (e), mandates that "[s]ubparagraph (b) above is intended to be construed in accordance with" several then-existing federal regulations.[6] § 11040(1)(A)(3)(e). These regulations include former 29 C.F.R. § 541.308 (2001). *Id.* At the time, § 541.308 provided:

> [S]ome employers erroneously believe that anyone employed in the field of *accountancy*, engineering, or other professional fields, will qualify for exemption as a professional employee by virtue of such employment. While there are many exempt employ-

---

[6]The 2001 Wage Order went into effect January 1, 2001, so the relevant federal regulations are the ones existing as of that date.

ees in these fields, the exemption of [an] individual depends upon his duties and other qualifications.

§ 541.308(a) (emphasis added). Thus, to construe subsection (b) specifically, the IWC incorporated a former federal regulation that explicitly references accountants. It would make little sense for the IWC to do this if subsection (b) was not intended to cover those accountants who meet its requirements.

**[6]** Had the IWC intended for subsection (b) to categorically exclude entire professions, it could have easily conveyed that intent in just a few additional words. For example, subsection (b) might have said, "For professions not enumerated in (a), . . . [apply the remaining requirements for subsection (b)] . . . ." But the IWC did not include similar limiting language, and contrary to Plaintiffs' arguments, the exemption does not otherwise indicate this intent. Accordingly, we conclude the exemption allows accountants—licensed or not—to meet the requirements of subsection (b).

**[7]** Of course, our plain-meaning interpretation does not mean every unlicensed accountant will fall under subsection (b). Each case will require a fact-specific inquiry into whether the unlicensed accountant meets the subsection's various benchmarks—e.g., engaging in work that is "predominately intellectual and varied in character." § 11040(1)(A)(3)(b)(iii). And that is exactly how the former federal regulations tell us the inquiry must proceed: "the exemption of [an] individual [under subsection (b)] depends upon his duties and other qualifications." § 541.308(a).

Although we express no opinion on how easily or frequently unlicensed accountants might satisfy subsection (b), we do not agree that an unlicensed accountant could never possibly do so. To conclude otherwise would require us to ignore the potential for substantial variance from one unlicensed accountant to another. Even within PwC alone, the

record indicates significant differences in skill level, responsibility, and experience between Attest associates and senior associates, both of whom may be unlicensed.

Finally, we disagree with the district court that allowing accountants to fall under subsection (b) would render subsection (a) superfluous. *See, e.g.*, *Hughes v. Bd. of Architectural Exam'rs*, 952 P.2d 641, 649 (Cal. 1998) (holding that courts should attempt to give meaning to every word and phrase in a statute). In the district court's view, if subsection (b) covered accountants, subsection (a)'s inclusion of accountants would be mere surplusage. *Campbell*, 602 F. Supp. 2d at 1179-80. Every licensed accountant under subsection (a) would also fall under subsection (b) as a "learned" professional. *Id.*

The district court's reasoning here critically overlooks the burden of proof on establishing exemptions from mandatory overtime. An employee does not fall into subsections (a) or (b) automatically; his or her employer must prove the applicable subsection. *Yosemite Water*, 978 P.2d at 8. Thus, even if the district court is correct that every licensed accountant under subsection (a) could also fall under subsection (b), subsection (a) still serves a distinct purpose. Namely, subsection (a) is *much easier for an employer to prove*. Subsection (a) precludes the factual disputes for which subsection (b) is a veritable hotbed—even in this case—about the employee's actual job duties and whether those duties meet the requirements of a "learned" or "artistic" profession. Under subsection (a), once the employer proves the employee is licensed in California and practices one of the eight enumerated professions, the inquiry is over. For that reason, subsection (a) is not superfluous even if every licensed accountant it covers could also fall under subsection (b). Though the two subsections may often end at the same place, subsection (a) is a much easier path.

**B**

In addition to undercutting the professional exemption's unambiguous text and structure, the district court's reasoning for categorically excluding accountants from subsection (b) would create highly problematic precedent. Were we to adopt the district court's analysis, unlicensed California employees in all eight of subsection (a)'s enumerated professions—including doctors, engineers, and lawyers—would have a compelling argument for mandatory overtime pay. This cannot be the law.

As amici correctly note, "None of the [district court's] core justifications [on the professional exemption] . . . are specific to the profession of accounting." Amicus Br. of Employers Group, Chamber of Commerce of the U.S.A., & Cal. Chamber of Commerce 16-17. In reaching its conclusion, the district court relied almost exclusively on two canons of statutory interpretation. *See Campbell*, 602 F. Supp. 2d at 1181. First, as previously explained, the district court applied the canon against surplusage to conclude that subsection (a) would be rendered superfluous if accountants were not excluded from subsection (b). *Id.* at 1179-80. Second, the district court applied a substantive canon of California employment law requiring that ambiguous statutes be broadly construed in favor of employees. *Id.* at 1173 (citing *Yosemite Water*, 978 P.2d at 8).

The district court suggested its application of these two statutory canons extended only to the accounting profession. *Id.* at 1181. We see no reason why this holding would be so confined. Courts may apply statutory canons only when a statute's text is ambiguous. *Martinez*, 231 P.3d at 268. We have already held the professional exemption's text is not ambiguous, but even if we momentarily assume to the contrary, any textual ambiguity would necessarily affect all eight enumerated professions in subsection (a), not just accounting. This is because the exemption's text and structure do nothing to dis-

tinguish accounting from the seven other enumerated professions. *See* § 11040(1)(A)(3).

Indeed, the district court did not find any accounting-specific ambiguity on the face of the exemption. Rather, the district court believed the exemption was structurally ambiguous as to the relationship between subsections (a) and (b)—an ambiguity that would necessarily affect all eight enumerated professions. *Campbell*, 602 F. Supp. 2d at 1174.

Thus, if the two statutory canons dictate that accountants cannot be exempt under subsection (b), they would also dictate that no employee in *any* of the eight enumerated professions can be exempt under subsection (b). Left with only subsection (a), every lawyer, doctor, dentist, optometrist, architect, engineer, or teacher who is not "licensed or certified by the State of California" would not qualify for the professional exemption. *See* § 11040(1)(A)(3)(a).

This rule would create significantly troubling results. For example, California employers would likely have to pay mandatory overtime to the following hypothetical professionals: a recent medical-school graduate working as a resident at a hospital;[7] a first-year associate at a California law firm who has taken the California bar exam but not yet received his results; a law clerk on the Supreme Court of California who is waiting until after her clerkship to take the bar exam; a senior associate at a New York law firm who temporarily relocates to the firm's California office to handle a trial *pro hac vice*;[8] or a Chicago lawyer who moves to California to do in-house work

---

[7]In California, a physician or surgeon cannot become licensed until he has completed one to two years of residency. Cal. Bus. & Prof. Code § 2096.

[8]Plaintiffs argue that procedures like *pro hac vice* admission allow lawyers to practice "*as if* they were 'licensed or certified' by the State of California." But subsection (a) plainly requires that the employee actually *be* "licensed or certified by the State of California." § 11040(1)(A)(3)(a).

for a California corporation.[9] These cannot be results the IWC intended.

Apparently recognizing the unrestricted implications of its reasoning, the district court abstractly suggested its ruling was somehow limited only to accountants:

> The court expresses no opinion on whether other specific employees engaged in the enumerated professions, such as law firm associates whose bar admissions are still pending, may [be exempt under subsection (b)]. As Justice Holmes wrote, "[T]he life of the law has not been logic; it has been experience." The Common Law, 1 (1881).

*Campbell*, 602 F. Supp. 2d at 1181. With due respect to Justice Holmes, we submit that "logic" is of paramount importance in shaping legal precedent affecting the wages of California's hundreds of thousands of professional employees. We cannot endorse a ruling that would open the door for employees like the hypothetical professionals described above —and many others—to take their employers to court and demand overtime pay. If the professional exemption covers anyone at all, it must cover those types of employees.

## C

So far, we have held only that unlicensed accountants are not categorically ineligible for the professional exemption as a matter of law. This does not end our inquiry. We could still

---

[9]A lawyer licensed in another state can become registered in-house counsel in California without obtaining a California law license. Cal. R. Ct. 9.46. Plaintiffs attempt to equate "registration" under this rule with true California licensure. This is an inaccurate reading of Rule 9.46. The rule exclusively refers to the process as one of "registration," never once using the words "license" or "licensure." *See* Cal. R. Ct. 9.46(e). In fact, the rule clearly establishes that registration entails less stringent requirements than licensure. *Id.* 9.46(c)(3).

affirm the district court's grant of partial summary judgment if PwC had not established any material fact question on whether Plaintiffs here meet the exemption's requirements. *See* Fed. R. Civ. P. 56(a), (e)(3).

To the contrary, we believe the record establishes several material fact questions on this issue. As already explained, the crucial touchstone for the professional exemption—especially subsection (b)—is the employee's actual job duties and responsibilities.     § 541.308(a)     (incorporated     by § 11040(1)(A)(3)(e)); see also DLSE Enforcement Policies & Interpretations Manual § 52.3.1 (2002) ("As with any of the exemptions, job titles . . . alone may not reflect actual job duties, and therefore[ ] are of no assistance in determining exempt or non-exempt status.") [hereinafter 2002 DLSE Manual]. The record here contains myriad conflicting evidence about Plaintiffs' duties and responsibilities as unlicensed Attest associates. The parties dispute everything from what Attest associates actually do during audit engagements to whether PwC can reasonably expect unlicensed junior accountants to perform anything more than menial, routinized work. The wide array of evidence from both parties includes depositions from class members and other PwC employees, internal PwC manuals explaining job roles and procedures for audit engagements, and detailed training documents for PwC's auditing software. Only a factfinder can weigh this voluminous conflicting evidence and determine whether Plaintiffs meet the standards of the professional exemption. *See People v. Maury*, 68 P.3d 1, 46 (Cal. 2003) ("[I]t is the exclusive province of the [factfinder] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.").

## IV

We now turn to the administrative exemption. At summary judgment, the district court determined PwC had not raised material fact questions on essential elements of this exemp-

tion. We disagree. Viewing the evidence in the light most favorable to PwC, as we must, PwC has proffered enough evidence to survive summary judgment and take the administrative-exemption defense to trial.

**[8]** To exempt an employee under the administrative exemption, an employer must establish five elements[10]:

1.  The employee performs work "directly related to management policies or general business operations" of either the employer or the employer's clients;

2.  The employee "customarily and regularly exercises discretion and independent judgment";

3.  The employee works "under only general supervision" while either: (1) performing work along specialized or technical lines requiring special training, experience, or knowledge, or (2) executing special assignments and tasks;

4.  The employee is "primarily engaged" in exempt work meeting the above requirements; and

5.  The employee meets a minimum salary requirement.

§ 11040(1)(A)(2). At summary judgment, Plaintiffs argued PwC had not raised material fact questions on the first and fourth elements.

The district court granted Plaintiffs' motion, but rested its decision primarily on the third element. Analyzing that ele-

---

[10]On a few of these elements, the exemption also establishes alternative options not at issue in this case. *See, e.g.*, § 11040(1)(A)(2)(a)(II) (administration of a school system).

ment, the district court found there was no material fact question on whether Plaintiffs' work during audit engagements was performed "under only general supervision." *Campbell*, 602 F. Supp. 2d at 1183-85 (citing § 11040(1)(A)(2)(d)-(e)). As the district court put it, "[Plaintiffs'] accounting work, which includes all the work that allegedly administers clients, is necessarily subject to more than general supervision, and therefore nonexempt." *Id.* at 1184. Because all of Plaintiffs' audit work was therefore deemed nonexempt, the district court also concluded there could be no fact question on whether Plaintiffs "primarily engaged" in exempt work (as required by the fourth element).[11] *Id.* at 1185.

## A

The "general supervision" requirement has not received much interpretation. Attempting to guide its analysis, the district court cited three extrinsic sources, none of which actually define "general supervision." First, the court cited the DLSE's Enforcement Policies and Interpretations Manual, which contains several examples of general supervision. *Id.* at 1183 (citing 2002 DLSE Manual § 52.3 ¶ 2-3). Unfortunately, as the district court explained, these examples are circular. The examples mention specific professions like tax experts and wage-rate analysts but then merely repeat without explanation the phrase "under only general supervision." 2002 DLSE Manual § 52.3 ¶ 2-3. Further, the examples do not differ from unlicensed accountants to a degree from which one could infer that unlicensed accountants cannot possibly work under only general supervision.

The other two sources cited by the district court, a California statute and a professional accounting standard, both require that unlicensed accountants be subject to control,

---

[11] To "primarily engage" in exempt work, an employee must spend at least 50% of his or her time on exempt work. *See Combs v. Skyriver Commc'ns, Inc.*, 72 Cal. Rptr. 3d 171, 191 (Cal. Ct. App. 2008).

supervision, and review by licensed CPAs. *Campbell*, 602 F. Supp. 2d at 1183-84 (citing Cal. Bus. & Prof. Code § 5053; American Institute of Certified Public Accountants (AICPA) Professional Standards § 311.12). Although these two provisions tell us Plaintiffs must be supervised, they say nothing about whether that supervision must exceed mere "general" supervision. Neither provision distinguishes general supervision from any other kind of supervision. Both provisions require supervision of some kind, but not of any particular degree or scope. *See* Amicus Br. of AICPA 8 ("It simply is impossible to derive a single rule of supervision from the Auditing Standards . . . ."). For that reason, we cannot conclude as a matter of law that all unlicensed accountants are necessarily subject to more than general supervision.

**[9]** Given the unhelpfulness of these three authorities and the numerous factual disputes in the record, the district court should not have disposed of this issue at summary judgment. Both parties introduced a wealth of evidence about the nature and scope of PwC's supervision over Plaintiffs. A jury should evaluate credibility and weigh this extensive conflicting evidence. *See Maury*, 68 P.3d at 46. Instead, the district court barely analyzed the evidence, relying solely on the three sources above to conclude that none of Plaintiffs' work for PwC's clients could possibly have been performed under only general supervision. Without better guidance on the legal definition of "general supervision," this highly contested fact issue can be resolved only after trial.

**B**

The record also contains material fact questions on the first and fourth elements of the administrative exemption, the two elements on which Plaintiffs actually moved for summary judgment. Under the first element, Plaintiffs' work must "directly relate[ ] to management policies or general business operations" of either PwC itself or PwC's clients. § 11040(1)(A)(2)(a)(I). To meet this test, Plaintiffs' work

must be of "substantial importance" to management or business operations. 29 C.F.R. § 541.205(a) (2001) (incorporated by § 11040(1)(A)(2)(f)).

Although the record contains evidence that Plaintiffs may do some work affecting PwC's own management and operations—e.g., participating in internal committees—this work is clearly not the bulk of an Attest associate's responsibilities. The more important question, and the one the jury will need to resolve, is whether Plaintiffs' work for PwC's clients during audit engagements is of "substantial importance" to the management or operations of the clients' businesses. § 541.205(a). This inquiry will be fact-intensive: "It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business." *Id.* § 541.205(c)(1).

While we recognize Plaintiffs are on the low end of PwC's hierarchy, we see no authority that would bar their audit work from meeting this test as a matter of law. The former federal regulations incorporated by the administrative exemption include several examples of administratively exempt white-collar employees, including tax consultants, wage-rate analysts, analytical statisticians, claim agents, and "many others." *Id.* § 541.205(c)(3), (5). In contrast, the examples of non-exempt employees are predominately clerical—bookkeepers, secretaries, messengers, and other "clerks of various kinds." *Id.* § 541.205(c)(1)-(2). Whether Plaintiffs are more comparable to the former category or the latter will depend on how the jury resolves the numerous factual disputes discussed above concerning what Attest associates actually do (and what PwC reasonably expects them to do) during audit engagements.

Resolution of these factual disputes will then affect whether Plaintiffs are "primarily engaged" in exempt work. *See* § 11040(1)(A)(2)(f). If the jury determines Plaintiffs' work during audit engagements is not of "substantial importance"

to the clients' management or operations, it will likely be difficult for PwC to establish that Plaintiffs spend more than 50% of their time on administratively exempt work. *See supra* note 11. If the jury determines to the contrary, PwC will have a much stronger case. Either way, on the record before us, the district court erred in disposing of this issue as a matter of law. The question is intensely factual and is one for the jury, not the court at summary judgment.

## V

**[10]** The district court erred in granting partial summary judgment to Plaintiffs. PwC has viable defenses under the professional exemption, Cal. Code Regs. tit. 8, § 11040(1)(A)(3), and the administrative exemption, *id.* § 11040(1)(A)(2). Neither exemption is categorically inapplicable to unlicensed accountants as a matter of law, and PwC has established material fact questions on whether Plaintiffs fall under either exemption. The exemption defenses must be resolved at trial.

**REVERSED and REMANDED.**