# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HILDA L. SOLIS, SECRETARY OF
LABOR, UNITED STATES DEPARTMENT
OF LABOR,

    *Plaintiff-Appellant,*

v.

STATE OF WASHINGTON, DEP'T OF
SOC. & HEALTH SERVS.,

    *Defendant-Appellee.*

No. 10-35590

D.C. No.
3:08-cv-05479-BHS

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted
August 1, 2011—Seattle, Washington

Filed September 9, 2011

Before: John T. Noonan and Milan D. Smith, Jr.,
Circuit Judges, and Jeremy Fogel, District Judge*

Opinion by Judge Fogel

---

*The Honorable Jeremy Fogel, United States District Judge for the Northern District of California, sitting by designation.

17171

## COUNSEL

M. Patricia Smith, Solicitor of Labor; William C. Lesser, Acting Associate Solicitor; Paul L. Frieden, Counsel for Appellate Litigation; Rachel Goldberg, Attorney, for the plaintiff-appellant.

Robert M. McKenna, Washington State Attorney General; Kara A. Larsen, Assistant Attorney General Labor and Personnel Division, for the defendant-appellee.

## OPINION

FOGEL, District Judge:

The Secretary of Labor[1] has filed a complaint against the State of Washington, Department of Social and Health Services ("DSHS"), alleging that DSHS has failed to pay over-time compensation to certain social workers in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"). The district court granted summary

---

[1]The complaint was filed by Elaine L. Chao, in her capacity as Secretary of Labor. The caption has been updated to reflect the appointment of Hilda L. Solis to that position.

judgment in favor of DSHS, concluding that the social workers come within the "learned professional" exemption to the FLSA's overtime pay requirements. The Secretary appeals.

To avail itself of the "learned professional" exemption, an employer must show that a position requires advanced knowledge customarily acquired by a prolonged course of specialized intellectual instruction. Because the social worker positions at issue here require only a degree in one of several diverse academic disciplines or sufficient coursework in any of those disciplines, we conclude that DSHS has not met its burden of showing that its social worker positions "plainly and unmistakably" meet the regulatory requirement. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

# I.

DSHS is a public agency created by the Washington legislature to "integrate and coordinate all those activities involving provision of care for individuals who, as a result of their economic, social or health condition, require financial assistance, institutional care, rehabilitation or other social and health services." Wash. Rev. Code § 43.20A.10. The Children's Administration is an agency within DSHS tasked with the mission of protecting abused and neglected children. It employs social workers in forty-four field offices who identify the needs of children and families and arrange for services to assure their safety and well-being. While the work of individual social workers varies, their responsibilities include investigating child abuse and neglect, developing and recommending appropriate treatment plans to courts, evaluating child and family progress in meeting treatment plans, making placement decisions, and recommending whether parental rights should be terminated.

DSHS asserts that it has established "rigorous educational qualifications" for its social workers. Candidates for Social

Worker 2 must have at least a "[b]achelor's degree or higher in social services, human services, behavioral sciences, or an allied field," as well as eighteen months as a Social Worker 1 or two years' experience in an equivalent position. Candidates for Social Worker 3 must meet the same educational requirements and have additional work experience. Within one year of their appointment, new employees in these positions must complete a formal training program that includes four weeks of classroom instruction and two weeks of field instruction.

DSHS uses an internal document entitled "Social Worker Minimum Qualifications Cheat Sheet" to assess whether candidates meet the educational requirements. That document sets out the degree requirements as follows:

> Education/Degrees:
> Social Services, human services, behavioral sciences or allied field (Not Social Science)
>
> Acceptable: Counseling, Psych[ology], Social Work, Human Services, Sociology, Child Development, Family Studies, Pastoral Counseling, Anthropology, Gerontology, Therapeutic Recreation, Education, Therapeutic Fields, Criminal Justice.
>
> Not Acceptable: History, Economics, Civics, Philosophy, Communications, Archeology, Nursing, Theology, Pastoral Studies, Religion, Recreation, Women's Studies, Native American Studies, Public Administration, Political Science, Law & Justice, Human Resources, Leisure Studies, Physical Education, Law Enforcement, Liberal Arts.
>
> (Note: These Courses would most often be acceptable under the broader heading of Social Sciences and upon review of transcripts if either 30 semester hours or 45 quarter credits were found that fall under

Social Services, they could be accepted for Social Workers)

Business Administration, Computer Science, Natural Sciences, Physical Sciences, Math, Fine Arts, General Studies.

According to the DSHS manager in charge of screening applicants, "if a candidate's degree is from an accredited institution and the title of the degree falls within one of the acceptable fields, or they have the requisite number of semester hours or quarter credits in one of those fields, they have met the educational requirements." If a candidate's degree is not in an acceptable field, the candidate's coursework is evaluated to determine if the requisite number of credits are from fields on the list of acceptable degrees or are from courses similar to those in the curricula of acceptable fields at the University of Washington and Eastern Washington University.

In 2006, the Department of Labor ("DOL") initiated an investigation of DSHS after receiving a complaint from a DSHS employee. The DOL investigator concluded that the Social Worker 2 and Social Worker 3 positions do not qualify for the "learned professional" exemption of the FLSA. The Secretary subsequently initiated this action.

## II.

The district court concluded that the positions at issue require a sufficient amount of specialized intellectual instruction to qualify for the "learned professional" exemption. According to the district court, DSHS's requirements "are plainly more exacting than a bachelor's degree in 'any field' as stated in 29 [C.F.R] § 541.301(d), and more exacting than the caseworker's requirements outlined in the Department of Labor's 2005 opinion letter." The court also concluded that DSHS's requirement that social workers have at least eighteen months of experience in social work and that they be required

to complete additional formal training weighed in favor of a finding of specialized training.

The district court relied in large part on *Chatfield v. Children's Services, Inc.*, 555 F. Supp. 2d 532, 536-37 (E.D. Pa. 2008). In that case, the court held that truancy prevention case managers, who were required to have a bachelor's degree in social work, human services, or a related field, plus three years of work experience, came within the "learned professional" exemption. The court concluded that the degree requirements for a truancy prevention case manager position were sufficiently more specialized than a degree in "social sciences" to amount to "a specialized degree in a field related to the work [applicants] will perform." *Id.* at 537.

## III.

We review a district court's grant of summary judgment de novo. *See Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914 (9th Cir. 2003). "A district court's determinations regarding exemptions to the FLSA are questions of law that we review de novo. However, findings of fact underlying a legal determination are reviewed for clear error." *Cleveland v. City of L.A.*, 420 F.3d 981, 988 (9th Cir. 2005).

## IV.

**[1]** The FLSA requires that employers pay overtime compensation for all hours worked in excess of forty hours in a week unless a particular exemption applies. 29 U.S.C. § 207(a)(1). In addressing issues of statutory construction, we are "mindful of the directive that [the statute] is to be liberally construed to apply to the furthest reaches consistent with Congressional direction." *Klem v. Cnty. of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (quotation marks omitted). "FLSA exemptions are to be 'narrowly construed against . . . employers' and are to be withheld except as to persons 'plainly and unmistakably within their terms and spirit.' " *Auer v. Robbins*,

519 U.S. 452, 462 (1997) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). "An employer who claims an exemption from the FLSA bears the burden of demonstrating that such an exemption applies." *Klem*, 208 F.3d at 1089. "The criteria provided by regulations are absolute and the employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of the Act." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002) (quoting *Mitchell v. Williams*, 420 F.2d 67, 69 (8th Cir. 1969) (quotation marks omitted).

**[2]** The FLSA includes an exemption from the overtime requirement for "any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). Under DOL regulations, the term "employee employed in a bona fide professional capacity" means an employee whose primary duties require "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a)(2)(I). The section entitled "Learned Professionals" provides that:

> (a) To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. This primary duty test includes three elements:
>
> (1) The employee must perform work requiring advanced knowledge;
>
> (2) The advanced knowledge must be in a field of science or learning; and
>
> (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.301 ("learned professional exemption").[2]

The regulations include further detail about the third element of this exemption:

> The phrase "customarily acquired by a prolonged course of specialized intellectual instruction" restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession. The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree. . . . [T]he learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.

29 C.F.R. § 541.301(d).

[3] While we have not addressed this provision previously, our sister circuits have concluded that positions that do not require a particular course of intellectual instruction directly related to the employee's professional duties do not come within the "learned professional" exemption, even if they also require substantial practical experience. In *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991), the court held that probation officers, who were required to have a bachelor's degree in any field, including

---

[2]The Secretary has conceded that social workers meet the first two elements of the "learned professional" exemption.

"nuclear physics" or "basketweaving," *id.* at 1565-66, did not qualify for the "learned professional" exemption despite a requirement of one year of prior experience in law enforcement or corrections. In *Fife v. Harmon*, 171 F.3d 1173 (8th Cir. 1999), the Eighth Circuit considered the application of the exemption to aviation operation specialists, who were required to have either a bachelor's degree in aviation management or a directly related field, *or* four years of full-time experience in aviation administration, *or* some combination of the two. The court concluded the "learned professional" exemption did not apply because the employees acquired their advanced knowledge "from a general academic education or from an apprenticeship" and not from a "prolonged course of specialized study," *id.* at 1177. In *Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001), the court held that emergency medical technicians and paramedics, who were required to complete 200 to 880 hours of didactic training, clinical experience, and field internship, did not satisfy the education prong of the "learned professional" exemption. *Id.* at 676.

[4] In contrast, in situations in which applicants are required to complete a particular course of instruction directly related to a position, even if they do not have a specific degree, courts have concluded that the "learned professional" exemption is applicable. In *Owsley v. San Antonio Independent School District*, 187 F.3d 521 (5th Cir. 1999), the court concluded that state-licensed athletic trainers were exempt even though applicants could qualify with a bachelor's degree in any field. To obtain a license, trainers also had to complete courses in the specific areas of "(a) human anatomy; (b) health, disease, nutrition, fitness, wellness, or drug and alcohol education; (c) kinesiology; (d) human physiology or physiology of exercise; and (e) athletic training." The court concluded that "the brevity of the trainer's course of specialized study [did] not preclude its inclusion under the "learned" prong." *Id.* at 524. The court distinguished *Dybach* on the basis that the trainers were required to "take a specified num-

ber of specialized courses directly related to their professional duties." *Id.* at 525.[3]

Other circuit courts have reached similar conclusions. In *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000), the Sixth Circuit determined that a licensed funeral director was a "learned professional" despite the absence of a college degree requirement because licensing required a specific course of study including completion of one year of mortuary instruction and two years of college, with classes in chemistry and psychology and a passing grade on national board tests in embalming, pathology, anatomy, and cosmetology. The court concluded that a funeral director was required to "complete a specialized course of instruction directly relating to his primary duty of embalming human remains." *Id.* at 742. In *Reich v. Wyoming*, 993 F.2d 739 (10th Cir. 1993), game wardens required to have a bachelor's degree in wildlife management, wildlife biology, or a closely related field, as well as basic law enforcement training, were found to be "learned professionals." The court concluded that the curricula for such degrees contain an "emphasis on biology, zoology, botany, and other physical sciences," *id.* at 741, which provides requisite knowledge of the tasks associated with wildlife management, *id.* at 743.

[5] Read together, these authorities are consistent with the two opinion letters the DOL has issued with respect to social workers. The DOL's interpretation of its own regulations generally is accorded controlling deference "unless plainly erroneous or inconsistent with the regulation." *Auer,* 519 U.S. at 461 (quotation marks omitted) (granting deference to DOL interpretation of FLSA regulations articulated in an *amicus curiae* brief). In 2001, the DOL published an opinion letter

---

[3]*Owsley* in turn was distinguished by *Vela*, in which the court concluded that the EMT/paramedic education requirements at issue there were "much less rigorous" than required for the trainers in *Owsley*. *Vela*, 276 F.3d at 676.

entitled "Social Caseworkers/Professional Exemptions," addressing "whether the educational requirements for [certain social caseworker positions] satisfy the 'advanced learning requirement for the professional exemption . . . .' ", 2001 WL 1558756 ("2001 Letter"). The caseworkers in question were found to meet the educational criteria for the "learned professional" exemption because the employer required "a master's degree in social work or human services, or a bachelor's degree in human behavioral science," as well as with specified work experience. *Id.* Importantly, the letter detailed the course of academic study needed to meet the position's degree requirement:

> To meet the human behavioral science degree requirement the employee must have at least 30 semester hours or 45 quarter hours either in development of human behavior, child development, family intervention techniques, diagnostic measures of therapeutic techniques such as social work, psychology, sociology, guidance and counseling, and child development.

*Id.*[4] While it is doubtful that the grammatical structure of this

---

[4]Unfortunately, this sentence uses an "either" without an "or," and it fails to clarify the relationship between the items listed following the "such as" with the items listed earlier. The sentence likely was intended to read as follows:

> To meet the human behavioral science degree requirement the employee must have at least 30 semester hours or 45 quarter hours either in development of human behavior, child development, family intervention techniques, diagnostic measures [or] therapeutic techniques[,] such as social work, psychology, sociology, guidance and counseling, and child development.

Such a construction would indicate that applicants may count classes in fields such as social work, psychology, sociology, guidance and counseling, and child development, but only to the extent that such courses focus on areas of development of human behavior, child development, family intervention techniques, diagnostic measures, or therapeutic techniques.

excerpt would satisfy the rigorous standards of Justice Scalia and Professor Garner, *see generally* Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* (2008), nonetheless it is clear that caseworkers must hold a degree in a specific area of behavioral science and that their coursework must focus on developmental and therapeutic knowledge directly related to their duties.

In a 2005 opinion letter, the DOL addressed the application of the "learned professional" exemption to a different group of social workers and caseworkers. The letter distinguished social worker positions that required "a master's degree in social work, drug and alcohol, education, counseling, psychology, or criminal justice," from caseworker positions that required only "a bachelor's degree in social sciences." ("2005 Letter") 2005 WL 3308621. The DOL concluded that the criteria for the social worker position "require[d] advanced knowledge in a 'field of science or learning,' " and that such workers would qualify for the exemption as long as they "work[ed] in the field of their degree." On the other hand, the caseworker position did not qualify for the exemption because "[t]he course of study for a bachelor's degree in 'social sciences' does not constitute the 'specialized' academic training necessary to qualify an occupation for the learned professional exemption." *Id.*

**[6]** The education requirements for the social workers at issue in this case fall between those applicable to the employees whose positions were analyzed in the two letters. The district court observed correctly that the requirement of a degree in "social services, human services, behavioral sciences or an allied field," is more specific than the requirement of a degree in "social sciences." For example, degrees in social sciences such as political science or economics generally would not satisfy the DSHS requirements. However, it also is clear that DSHS's requirements are less specific than the combination described in the 2001 Letter of a degree in "behavioral sciences" with a particular course of study in developmental and

therapeutic techniques. The dispositive question here is not whether DSHS requires more than a degree "in any field," but whether it requires a "prolonged course of specialized intellectual study."

[7] Relying upon *Chatfield*, the district court concluded that DSHS's requirement of a degree in "human services, behavioral sciences or an allied field" was sufficient to show that "applicants [must] hold a specialized degree in a field related to the work they will perform." However, even assuming that *Chatfield* was correctly decided, there is no indication that the record in that case contained evidence similar to the DSHS "cheat sheet." It is clear from that document that the degree requirements for social worker positions do not "plainly and unmistakably" include a *specialized* course of study directly related to the positions.[5]

The social workers discussed in the 2001 opinion letter were required to complete a specific course of study, and a certain number of courses had to be focused on developmental or therapeutic knowledge directly related to the position of a social worker. While the requirements in the "cheat sheet" appear at first glance to have a similar limiting function, on closer examination they have the opposite effect, opening the social worker position to applicants whose degree and coursework may bear little relation to the actual duties of social workers. According to the "cheat sheet," a degree in

---

[5]*Chatfield* distinguished "social sciences" from "social work, human services, and related fields," because "social sciences included sociology, psychology, anthropology, economics, political science and history," as opposed to degrees in fields related to the child services position at issue. 556 F. Supp. 2d at 536-37, However, the degree requirements in this case may be satisfied by a degree in several of the broad categories identified as social science—sociology, psychology, and anthropology—as well as in other disciplines whose connection to social work is tenuous, such as education and therapeutic recreation.

> Counseling, Psych[ology], Social Work, Human Ser-
> vices, Sociology, Child Development, Family
> Studies, Pastoral Counseling, Anthropology, Geron-
> tology, Therapeutic Recreation, Education, Thera-
> peutic Fields, [or] Criminal Justice,

is sufficient to meet the requirement, and no further examina-
tion into the coursework taken in those fields is undertaken.
Particular coursework is examined only if the applicant has a
degree in a "social science" not on the list of those acceptable.
Such fields include:

> History, Economics, Civics, Philosophy, Communi-
> cations, Archeology, Nursing, Theology, Pastoral
> Studies, Religion, Recreation, Women's Studies,
> Native American Studies, Public Administration,
> Political Science, Law & Justice, Human Resources,
> Leisure Studies, Physical Education, Law Enforce-
> ment, Liberal Arts.

Applicants with a degree in one of these disciplines still
may meet the requirements of the social worker position as
long as they have the specified number of credit hours in *any*
of the acceptable fields—without respect to the content of that
coursework. As a result, an applicant with a degree in anthro-
pology whose coursework focused on physical anthropology
would meet the educational requirements for the position, as
would an archeology major who took sufficient courses in
anthropology. Likewise, an applicant with a sociology degree
could meet the requirements without any focus on the thera-
peutic aspects of sociology, as would an applicant with a
women's studies or religious studies degree who had suffi-
cient coursework in sociology, with a degree in leisure studies
with sufficient coursework in education or therapeutic recre-
ation, or with a pre-law degree with coursework in criminal
justice.

[8] Whether a position requires a degree in a specialized
area, *see Reich*, 993 F.2d at 739, or merely a specific course

of study, *see Rutlin*, 220 F.3d at 737, a "prolonged course of specialized intellectual instruction" must be sufficiently specialized and relate directly to the position. An educational requirement that may be satisfied by degrees in fields as diverse as anthropology, education, criminal justice, and gerontology does not call for a "course of *specialized* intellectual instruction." Moreover, in this case the net is cast even wider by the acceptance of applicants with other degrees as long as they have sufficient coursework in any of these fields.

[9] DSHS nonetheless contends that it has presented evidence that each of the acceptable degrees relates to the duties of its social workers. However, while social workers no doubt have diverse jobs that benefit from a multi-disciplinary background,[6] the "learned professional" exemption applies to positions that require "a prolonged course of *specialized* intellectual instruction," not positions that draw from many varied fields. While particular coursework in each of the acceptable fields may be related to social work, DSHS admits that it does not examine an applicant's coursework once it determines that the applicant's degree is within one of those fields. For the "learned professional" exemption to apply, the knowledge required to perform the duties of a position must come from "advanced specialized intellectual instruction" rather than practical experience. 29 C.F.R. § 541.301(d). The requirement of a degree or sufficient coursework in any of several fields broadly related to a position suggests that only general academic training is necessary, with the employer relying upon apprenticeship and experience to develop the advanced skills necessary for effective performance as a social worker.

The district court also gave weight to the six-week formal training program required for accepted applicants. However,

---

[6]For example, there are obvious practical applications of a background in cultural anthropology or gerontology for social workers who serve diverse populations.

such a program was determined to be insufficient in *Vela*, where the court concluded that 880 hours of specialized training in didactic courses, clinical experience, and field internship did not satisfy the education prong of the "learned professional" exemption. 276 F.3d at 659. If six weeks of additional training, only four weeks of which is in the classroom, were sufficient to qualify as a specialized course of intellectual instruction, nearly every position with a formal training program would qualify.

[10] The district court concluded that the requirement of eighteen months of experience in social work was another factor weighing in favor of a determination of specialized instruction. However, the regulation states clearly that the exemption does not apply to "occupations in which most employees have acquired their skill by experience." 29 C.F.R. § 541.301(d). *Owsley*, upon which the district court relied, is not to the contrary, as the position at issue in that case included a requirement of specific academic courses as well as the apprenticeship requirement. 187 F.3d at 521. Indeed, *Owsley* distinguished *Dybach* on this exact point. *Id.* at 525.

[11] As noted previously, FSLA exemptions are construed narrowly against employers and "are to be withheld except as to persons plainly and unmistakably within their terms and spirit," *Klem*, 208 F.3d at 1089, and the employer has the burden of showing that a particular exemption applies, *Bothell*, 299 F.3d at 1124. We conclude that DSHS has not met its burden of showing that its social workers come within the "learned professional" exemption, and that the district court should not have granted summary judgment in its favor.[7]

---

[7]DSHS argues belatedly that requiring it to comply with the FLSA violates the Tenth Amendment and impinges on state sovereignty. Although DSHS did plead the defense of sovereign immunity in its amended answer, it never litigated the issue before the district court. Accordingly, we decline to review the issue until it has been argued in the court below. *See Berry v. County of Sonoma*, 30 F.3d 1174, 1186 (9th Cir. 1994) (declining to review county's argument that application of the FLSA to the county violates the Tenth Amendment because it was raised for the first time on appeal).

**REVERSED.**