Jason CAMPBELL and Sarah Sobek, individually, and on behalf of all other similarly situated current and former employees of PricewaterhouseCoopers, LLP, Plaintiffs,

v.

PRICEWATERHOUSECOOPERS, LLP, a Limited Liability Partnership;, and Does 1–100, inclusive, Defendant.

No. CIV. S–06–2376 LKK/GGH.

United States District Court, E.D. California.

Nov. 29, 2012.

Lyle W. Cook, Stuart C. Talley, William A. Kershaw, Kershaw, Cutter & Ratinoff, LLP, Sacramento, CA, for Plaintiffs.

Alexander Kosta Mircheff, Julian Wing-Kai Poon, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, Lynne C. Hermle, Orrick Herrington & Sutcliffe, LLP, Menlo Park, CA, Michele Leigh Maryott, Gibson, Dunn & Crutcher LLP, Irvine, CA, Andrea Lee Brown, David A. Prahl, Julie A. Totten, Norman C. Hile, Orrick Herrington and Sutcliffe LLP, Sacramento, CA, Daniel J. Thomasch, Phv, Lauren J. Elliot, Phv, Gibson, Dunn & Crutcher LLP, New York, NY, for Defendant.

### ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Defendant moves to de-certify the plaintiff class. For the reasons set forth below, the motion will be denied.

## I. INTRODUCTION

This is a class action brought by Attest Junior Associates employed in the California offices of PricewaterhouseCoopers LLC ("PwC") in California.[1] Jurisdiction is based upon class action diversity, 28 U.S.C. § 1332(d)(2)(A). The Second Amended Complaint alleges that PwC violated California wage and hour laws by, among other things, failing to pay required overtime to plaintiffs. California law:

> provides that a California employee is entitled to overtime pay for work in excess of eight hours in one workday or 40 hours in one week.

*Harris v. Superior Court,* 53 Cal.4th 170, 177–78, 135 Cal.Rptr.3d 247, 266 P.3d 953 (2011), *citing* Cal. Labor Code § 510(a).

Plaintiffs allege, and defendant disputes, that PwC improperly classified plaintiffs as "exempt" employees under California labor laws. This classification, if correct, would allow PwC to, among other things, avoid paying plaintiffs overtime wages for overtime work. As relevant here, California Law exempts from the overtime pay requirement, "administrative, and professional employees" whose primary duties meet the test of the exemption, and who regularly exercise "discretion and independent judgment" in performing those duties.[2] *Harris,* 53 Cal.4th at 178, 135 Cal.Rptr.3d 247, 266 P.3d 953, *citing* Cal. Labor Code § 515(a).

1. The plaintiffs are variously referred to as "junior accountants," "associate accountants," "associates" and "Attest Associates."

2. The law also exempts "executive" employees. However, defendant no longer asserts that exemption.

3. Employees of the "Tax" Line of Service, and of the "Systems Process Assurance" and "Transaction Services" Divisions within the Assurance line were excluded from the requested class, because plaintiffs, who were Attest Associates,

On March 25, 2008, this court certified the following class of plaintiffs:

> All persons employed by PricewaterhouseCoopers, LLP in California, from October 27, 2002, until the time when class notice was given, who: (1) assisted certified public accountants in the practice of public accountancy, as provided for in California Business and Professions Code §§ 5051 and 5053; (2) worked as Associates in the "Attest" Division of the "Assurance" Line of Service (hereinafter, "Attest Associates"); (3) were not licensed by the State of California as certified public accountants during some or all of this time period; and (4) were classified as "exempt" employees.

*See Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586, 590 (E.D.Cal.2008) (Karlton, J.).[3] The Ninth Circuit declined to review the order on interlocutory appeal.

On March 11, 2009, this court granted plaintiffs a summary adjudication on their assertion that Attest Associates could not qualify for the "professional" employee exemption because they were unlicensed. *See Campbell v. PricewaterhouseCoopers, LLP,* 602 F.Supp.2d 1163 (E.D.Cal.2009) (Karlton, J.). The Ninth Circuit reversed, holding that even unlicensed accountants could qualify for the "professional" employee exemption if they fit within the "learned profession" part of that exemption. *See Campbell v. PricewaterhouseCoopers, LLP,* 642 F.3d 820 (9th Cir.2011).

On this motion, defendant argues that decertification is now required by subsequent events and by intervening authority. Plaintiffs oppose, asserting that the certification motion was correctly decided, and should stand.

could not demonstrate "typicality" with those other employees under Rule 23(a). *Campbell,* 253 F.R.D. at 594, 604. Senior Associates in the Attest Division were excluded from the requested class because plaintiffs could not demonstrate that common questions of law or fact would "predominate" over any question affecting only individual members, under Rule 23(b)(3). *Id.,* 253 F.R.D. at 596 & 604. The Senior Associates seek class certification in a separate lawsuit. *See Kress v. PricewaterhouseCoopers, LLP,* Civ. No. 8:08–cv–965–LKK–GGH (E.D.Cal.).

## II. STANDARDS

### A. Class Decertification—Allocation of Burdens.

A class certification order "may be altered or amended before final judgment." Fed. R.Civ.P. 23(c)(1)(C). Of course, plaintiff, as the party seeking class certification, had the initial burden "of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23." *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir.2012); *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir.2010) ("The party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met").

 According to the normal practice followed in regard to motions, the proponent of a motion bears the initial burden of showing that the motion should be granted. However, in the case of a motion to decertify a class, the Ninth Circuit rule is that the party resisting the motion bears the burden of showing that the motion should not be granted. *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 947 (9th Cir.2011). The resisting party meets this burden by showing that class certification is still warranted:

> Thus, as to the class-decertification issue, Marlo, as "[t]he party seeking class certification [,] bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met."

*Id.*, 639 F.3d at 947.[4]

### B. Class Decertification—Rule 23(a).

 Class certification is proper, and therefore may withstand a motion to decertify, only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Federal Rules provide:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class

is so numerous that joinder of all members is impracticable ["numerosity"];(2) there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy" (of representation) ].

Fed.R.Civ.P. 23(a).

In the present context—a lawsuit alleging mis-classification of employees as exempt under California law—plaintiffs bear the burden of showing that the mis-classification " 'was the rule rather than the exception.' " *Marlo*, 639 F.3d at 947, *quoting Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 482 (C.D.Cal.2008).

### C. Class Decertification—Rule 23(b).

 In addition, class certification is proper only if "at least one of the requirements of Rule 23(b)" is satisfied. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir.2011). That rule provides:

> A class action may be maintained if Rule 23(a) is satisfied and if: ... [1] the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed.R.Civ.P. 23(b)(3).

 The court must be satisfied that the party that bears the burden has "affirmatively demonstrate[d]" that "there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. ——, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011). The Rule 23(b)(3) predominance inquiry asks whether the proposed classes "are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues."

---

4. *Quoting United Steel Workers*, 593 F.3d at 807, which holds that the proponent of the motion to *certify* the class bears the burden of proof. Of course, this court is bound by the Ninth Circuit rule.

*Mevorah v. Wells Fargo Home Mortgage (In re Wells Fargo Home Mortg. Overtime Pay Litigation),* 571 F.3d 953, 957 (9th Cir.2009) (citations and internal quotation marks omitted).[5]

## III. ANALYSIS—RULE 23(a)

### A. Numerosity.

This court has previously found that plaintiffs have satisfied the numerosity requirement. *Campbell,* 253 F.R.D. at 594. Defendant does not challenge that finding and it is re-affirmed here.

### B. Commonality.

■■■ To establish commonality, plaintiffs must establish "that there are one or more questions of law or fact common to the class." *Ellis,* 657 F.3d at 980, *citing* Fed.R.Civ.P. 23(a)(2). It is sufficient that there be one common question "apt to drive the resolution of the litigation." *Wal–Mart,* 131 S.Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) even a single [common] question will do") (internal quotation marks omitted):

> What matters to class certification ... is not the raising of common "questions"— even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Wal–Mart,* 131 S.Ct. at 2551.[6] This court has previously found that plaintiffs have satisfied the commonality requirement. *Campbell,* 253 F.R.D. at 594–95. Defendant challenges the finding on the grounds that subsequent events and intervening legal authority have undermined it. However, plaintiffs have once again met their initial burden to show the existence of common questions, and nothing in defendant's submissions refutes that showing.[7]

### 1. Common Contentions—Discretion and Independent Judgment.

■■■ Among defendant's affirmative defenses in this case is that plaintiffs were properly classified as "exempt" from the overtime pay requirements.[8] The two exemptions defendant still asserts are: the "learned profession" exemption; and the "administrative employee" exemption. One requirement that both of these exemptions have in common is that the employee must regularly and customarily use "discretion and independent judgment" in his or her work. Cal. Labor Code § 515(a); Cal.Code Regs., tit. 8, § 11040(1)(A)(2)(b) (administrative exemption) & 11040(1)(A)(3)(c) (professional exemption); *Campbell,* 253 F.R.D. at 599–600.

> The term discretion and independent judgment "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Former 29 C.F.R. § 541.207(a). "Discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after considering various possibilities."

*Campbell,* 253 F.R.D. at 600, *quoting Nordquist v. McGraw–Hill Broadcasting Co.,* 32 Cal.App.4th 555, 564, 38 Cal.Rptr.2d 221 (5th Dist.1995); *see also,* 2002 Update of The DLSE Enforcement Policies and Interpretations Manual (Revised) ("2002 Revised DLSE Manual") ¶ 53.3.8, & 53.3.8.1 (same).[9]

---

**5.** *Quoting Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir.), *cert. denied,* 534 U.S. 973, 122 S.Ct. 395, 151 L.Ed.2d 299 (2001), and *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir.1998).

**6.** *Quoting* Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 131–132 (2009).

**7.** Defendant's evidence goes to "predominance," which is discussed below.

**8.** The court notes that under California law, "exemptions from statutory mandatory overtime provisions are narrowly construed." *Ramirez v. Yosemite Water Co., Inc.,* 20 Cal.4th 785, 794, 85 Cal.Rptr.2d 844, 978 P.2d 2 (1999).

**9.** The interpretations of the California Department of Labor Standards & Enforcement ("DLSE") are not binding on this court, but they are helpful where, as here, they appear to carry out the intent of the law. *See Harris,* 53 Cal.4th at 190, 135 Cal.Rptr.3d 247, 266 P.3d 953 ("Although we generally give DLSE opinion letters

■ To meet their initial burden on this decertification motion, plaintiffs must show that there is common proof that will determine the common question of whether Attest Associates exercise discretion and independent judgment in their work:

> To show that an exemption policy resulted in widespread misclassification, there has to be some common proof that allows a fact-finder to make a class-wide determination.... The need for common proof recognizes that a plaintiff's evidence should have some common application to class members in order to provide a basis for the jury to find that "misclassification was the rule rather than the exception...."

*Marlo,* 251 F.R.D. at 484.

Plaintiffs have met their initial burden. They have made a legal and factual showing tending to refute the claim that the Attest Associates, are allowed to, or in fact do, exercise discretion and independent judgment. For example, plaintiffs have directed the court's attention to the deposition testimony of PwC's 30(b)(6) witness, Debbie McBee (Kershaw Decl. Exh. 5, ECF No. 556-1 at pp. 67–88), which indicates that an internal audit manual gives specific instructions on how Associates are to assist in the audit, what specific types of testing should be done, how the testing should be done, and what internal control framework should be followed.

Plaintiffs have also presented evidence that not only is everything the Associates do reviewed, but in essence, the Associates cannot make a move without first submitting it for the independent judgment of a supervisor. For example, even after an Associate has completed a "step" in an audit, nothing happens with regard to that step until a supervisor has reviewed all the documentation going into the step and then made his or her own judgment to approve it. *See* Depo. of Ashlee Pierce (Kershaw Decl. Exh. 24, ECF No. 556–8, pp. 24–34).

### 2. Common Contentions— Learned Profession.[10]

■ The first exemption defendant claims is the "learned profession" exemption. To prevail on the merits of this defense, defendant will have to show that an Attest Associate is a person primarily engaged in:

> Work requiring knowledge of an advanced type in a field [of] science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study ...; [and]

> Who customarily and regularly exercises discretion and independent judgment....

Cal.Code Regs., tit. 8, § 11040(1)(A)(3)(b).

■ As a threshold showing on the merits, defendant will have to show that the Attest position "requires advanced knowledge customarily acquired by a prolonged course of specialized intellectual instruction." *Solis v. Washington,* 656 F.3d 1079, 1081 (9th Cir.2011). To qualify for the exemption, the instruction must be "sufficiently specialized" and "relate directly to the position." *Id.,* at 1088–89. Indeed, "[t]he phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the exemption to professions where specialized *academic* training is a *standard prerequisite* for entrance into the profession." *Id.,* at 1084 (emphases added).[11]

It is apparent, then, that this exemption presents a common question: does acceptance into the Attest position require, as a standard prerequisite, advanced knowledge customarily acquired by a prolonged course of specialized academic instruction? It is also apparent on its face that this exemption is susceptible to common proof. One simple example of common proof here would be the resumes of Attest Associates. That evidence would tend to show whether or not Associates have the supposedly required academic training. Another example of common proof

---

'consideration and respect,' it is ultimately the judiciary's role to construe the language").

**10.** One common contention—whether a professional license is required for this exemption—has been resolved in the negative by the Ninth Circuit. *See Campbell,* 642 F.3d 820.

**11.** Both parties appear to accept the federal law and regulations, and the Ninth Circuit interpretation thereof, as at least providing relevant guidance to this court in construing the state law and regulations.

is the testimony of hiring managers to establish whether or not the academic credentials are a standard prerequisite for the hiring of an Attest Associate.

Plaintiffs have in fact, directed the court's attention to the declaration of Paul F. White (ECF No. 262), submitted by defendant in support of its earlier summary judgment motion. That declaration contains several tables purporting to show the academic credentials of Attest Associates. The chart (Exh. F), shows a wide variety of degree types awarded to the class members. There are mostly Bachelor's, Master's and MBA degrees, and most of the degrees are in Business and International Business, Economics, Accounting and Public Accounting, Management, Finance, Commerce, Statistics and Business Administration. However, there are also a "CAAP" certificate, and several Associate's Degrees. In addition, some of the degrees are in Systems Technology, General Education, Physical Education, General Coursework, Information and Computer Science, "None," History, Mass Communications, Applications and Mathematics, Microbiology, General Studies, "Radio, TV, and Film," English, "Science and Technique Japanese," Computer Applications, Zoology, Women's Studies and Info Systems Management.

Plaintiffs have also offered the testimony of defendant's own Rule 30(b)(6) witness, Kathleen Harada (Kershaw Decl. Exh. 1, ECF No. 556–1, pp. 1–16), on this point. Ms. Harada testified that although "it's preferred" for an applicant to have an accounting degree or to "show that you've taken the accounting courses" needed to sit for the CPA exam, nevertheless "[y]ou could be considered" for the position even if the applicant lacked the educational requirements needed to sit for the CPA exam. (Harada Decl. ECF pp. 9–10.)

Plaintiffs have thus met their initial burden for decertification purposes, that they can present common proof that the prolonged study requirement is not a standard prerequisite for the job of Attest Associate, and therefore that Associates are not covered by the "learned profession" exemption. Plaintiffs have shown that there is common

proof that defendant has cast its employment net wide enough to accept as Associates, people without "specialized" academic training. *See Solis,* 656 F.3d at 1088 ("An educational requirement that may be satisfied by degrees in fields as diverse as anthropology, education, criminal justice, and gerontology does not call for a 'course of specialized intellectual instruction'").

### 3. Common Contentions—The Administrative Exemption.

Defendant next asserts that plaintiffs are exempt because they are "administrative" employees. Plaintiffs bear the burden of establishing that they can present common proof on this exemption. The exemption applies to an employee:

(a) . . . [w]hose duties and responsibilities involve . . . [t]he performance of office . . . work directly related to management policies or general business operations of his/her employer or his employer's customers; and

(b) Who customarily and regularly exercises discretion and independent judgment; and . . .

(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; . . . and

(f) Who is primarily engaged in duties that meet the test of the exemption.

Cal.Code Regs., tit. 8, § 11040(1)(A)(2).

Accordingly, common contentions that plainly present themselves are: (1) do the Attest Associates perform work directly related to the management policies or general operations of PwC or its clients; (2) do they customarily and regularly exercise discretion and independent judgment; (3) do they work under only general supervision; and (4) are they primarily engaged in exempt work?

As discussed above, plaintiffs have met their initial burden of showing the existence of a common contention regarding "discretion and independent judgment." Accordingly, they have met their initial burden regarding this exemption.

## C. Typicality and Adequacy

 Defendant argues that the named plaintiffs are not "typical" of the class nor "adequate" representatives because they were not good employees. Defendant asserts that the named plaintiffs were substandard performers, received poor performance reviews and had limited audit experience. Motion To Decertify at 47 (ECF p. 55). However, the named plaintiffs satisfy the typicality requirement not because they were model employees, but because they present the same common questions as are presented by the other class members. For example, they present the common issues of whether their work involved the exercise of discretion and independent judgment, and whether they had to be "learned professionals" before they could be hired as Associates. In addition, as the court has already found, they are adequate representatives because there is no conflict of interest between the named plaintiffs and the class, and counsel has ample experience in these types of cases. The court re-affirms the findings of typicality and adequacy.

## IV. ANALYSIS—RULE 23(b)(3)

### A. Predominance.

Defendant has again submitted a small mountain of declarations to show that the individual issues will predominate over common issues.

#### 1. Learned Profession.

 The common contention here, as discussed above, is whether a "prolonged course of specialized intellectual instruction and study" is a standard prerequisite for the position of Attest Associate.

Defendant argues that individual issues predominate because the court must determine how the Associates' educations were "customarily acquired." Motion To Decertify at p. 37 (ECF p. 45). But that is not what the court must determine. The learned profession exemption does not ask where or how Attest Associates acquired their educations. It asks whether their occupation—Attest Associate—is one which customarily requires a prolonged course of specialized intellectual instruction and study. Thus, it is enough to determine whether or not PwC requires such an educational background of its potential hires. This should be a simple matter of common proof. PwC can submit resumes, together with its hiring policies. Plaintiffs can submit resumes, along with whatever evidence they think shows that PwC did not require such an education prior to hire.

Defendant also argues that the threshold inquiry here is a "fact-specific" inquiry into what *work* each Associate does, citing the Ninth Circuit's summary judgment decision in *Campbell*, 642 F.3d at 827. Motion To Decertify (ECF No. 515–1) p. 37 (ECF p. 45). Because each Associate's work must be examined, defendant argues, there can be no common proof. Nothing in the decision, however, says or implies that an examination of the individual work of every single Associate is a "threshold" requirement for certification of the class.

Defendant further argues that the Ninth Circuit did not really mean it when it held that the "prolonged course of specialized intellectual instruction," was a "standard prerequisite" for the "learned profession" exemption. *Solis,* 656 F.3d at 1084. First, defendant attempts to defuse the "standard prerequisite" language by noting that it occurs only in a "singular reference." However, defendant does not explain the significance of its appearing only once in the decision. Next, defendant takes the "standard prerequisite" phrase apart, and attempts to define one part of it—"standard"—essentially out of existence. According to defendant, the Merriam Webster Dictionary in 1983 defined "standard" to mean "typical" or "usual," and therefore a standard prerequisite does not refer to an actual requirement. Defendant does not however, define "prerequisite," thus presenting only one-half of an argument.

In fact, the Ninth Circuit's use of the term "standard prerequisite" is entirely consistent with its overall decision in the case—the prolonged study requirement is a *threshold* requirement that must be established before the court can find that an employee is exempt under the learned profession exemp-

tion.[12] Nothing in *Solis* indicates that the court meant by "standard prerequisite" anything other than a *requirement* that must be met *before* qualifying for the position.

### 2. Discretion and Independent Judgment.

■ This court previously found that the mere fact that Associates were supervised might not be sufficient to establish that the "administrative" employee exemption did not apply. However, looking at the actual work done by Associates, the court found that the work was sufficiently similar that common issues would predominate.

Plaintiff has again met its initial burden to show that common issues predominate here. In response, defendant has submitted many declarations purporting to show how different the actual work is that Associates do. In fact, the declarations do show a wide variety of work by Associates. However, in the key area of whether that work involves the exercise of discretion and independent judgment, defendant has failed to show that individual issues will predominate.

Nothing in the varied work descriptions or seniority levels described in the declarations leads to the conclusion that some Associates *customarily* exercise discretion and independent judgment, while others do not.[13] To the contrary, the declarations show that even when an Associate is working as the "in-charge" on an engagement, his or her discre-

tion and independent judgment, if any, is cabined by the same level of close supervision.[14]

Defendant argues that an Attest Associate who reviews the work of other Attest Associates, or who supervises other Attest Associates, is necessarily exercising discretion and independent judgment. Defendant then produced evidence that several Attest Associates engaged in reviewing or supervising other Attest Associates. However, exemption does not blindly follow a label, as PwC itself argues. Thus, merely stating that an Associate engages in "supervising" interns, other employees, or even other Associates, does not end the inquiry. Nor does the assertion that an Associate "completed" a review for another employee. In fact, the rare declarations that do specify what is actually involved in these reviews make clear that they are simply recommendations that are brought to a supervisor who then makes the independent judgment about how to proceed.[15]

### B. Superiority.

The court has previously determined that class adjudication is the superior method of proceeding here. Defendant argues that a class action would be unmanageable because of the alleged predominance of individual issues. The court has already found that individual issues will not predominate, and according reaffirms its prior finding on superiority.[16]

---

12. In addition, the Ninth Circuit has, in other contexts, used "standard prerequisites" to refer to actual requirements, not simply typical or usual ones. *See Syverson v. IBM Corp.*, 472 F.3d 1072, 1078–79 (9th Cir.2007) (listing the "standard prerequisites" for "the application of offensive nonmutual issue preclusion").

13. The Declaration of Andrea Ekstrom (ECF No. 517–10/ Thomasch Decl., Exh. T25) presents one exception. Ekstrom was hired by PwC as a Senior Associate and gave a Declaration in her capacity as a Senior Manager. Her Declaration asserts that in one case, an Associate under her supervision determined which documents were needed from a client, and obtained those documents from the client without getting authorization from Ekstrom. However, a review of the submitted declarations from Attest Associates themselves does not show this level of independence. Thus, even accepting the Ekstrom Declaration at face value, it fails to show that this level of independence was customary for Associates.

14. For example, the Declaration of Laura Anderson (ECF No. 517–2 / Thomasch Decl., Exh. T17), shows that although Anderson was the "in-charge" on an engagement, all of her work was brought to her supervisor for the supervisor to make the independent judgment about how to proceed.

15. For example, the Declaration of Birgit Borgett (ECF No. 517–4 / Thomasch Decl., Exh. T19), shows that the Associate "in-charge" performed a "first level of review" of the work of a more junior Associate on the engagement. Borgett Decl. ¶ 13. The reviewed Associate's work was then subject to another level of review by a more senior person. *Id.*

16. In addition, defendant asserts that there is no common question in the claims that it denied meal periods and rest breaks. The common question is: whether class members were illegally denied meal periods and rest breaks. The

## V. ANALYSIS—INTERVENING AUTHORITY

### A. *Vinole v. Countrywide Home Loans, Inc.*

In *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir.2009), the Ninth Circuit affirmed the district court's denial of class certification for a proposed class of employees classified as "outside sales employees," and therefore exempt from California's overtime wage requirements. *Vinole* holds that it would be error to "adopt a rule that class certification is warranted under Rule 23(b)(3) whenever an employer uniformly classifies a group of employees as exempt, notwithstanding the requirement that the district court conduct an individualized analysis of each employee's actual work activity." *Id.*, 571 F.3d at 946 ("[w]e decline to adopt such an approach because . . . we hold that a district court abuses its discretion in relying on an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry").

This holding is entirely consistent with this court's 2008 certification decision. In that decision, this court expressly acknowledged the teaching of the California Supreme Court, on the merits of the exemptions, that "'the court should consider, first and foremost, how the employee actually spends his or her time.'" *Campbell*, 253 F.R.D. at 600, *quoting Ramirez*, 20 Cal.4th at 802, 85 Cal. Rptr.2d 844, 978 P.2d 2. Although *Ramirez* was opining on how the merits of the exemption should be determined, the requirement of examining how the employee actually spends his or her time spills over into the class question as well. And that is exactly what this court did.[17] After examining the

"small mountain" of declarations submitted by PwC, this court found that the job duties among Attest Associates was sufficiently similar to warrant class treatment. *Id.*, 253 F.R.D. at 604–05. However, this factual examination also convinced this court that the job duties of Senior Associates were sufficiently diverse that they should be excluded from the class encompassing junior Associates. *Id.*, at 605.

### B. *In re Wells Fargo Home Mortg. Overtime Pay Litigation.*

*Mevorah v. Wells Fargo Home Mortgage (In re Wells Fargo Home Mortg. Overtime Pay Litigation)*, 571 F.3d 953 (9th Cir.2009), is a companion case to *Vinole*. It also rejects any rule creating "a presumption that class certification is proper when an employer's internal exemption policies are applied uniformly to the employees." *Id.*, 571 F.3d at 958. *However, Wells Fargo* also acknowledges:

> Of course, uniform corporate policies will often bear heavily on questions of predominance and superiority. Indeed, courts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes.

*Id.*

Here again, this court can discern nothing in the Ninth Circuit decision that undermines this court's previous certification decision. To the contrary, this case, like *Vinole*, teaches that this court should apply the principle that it did apply in the certification decision—it is necessary to focus on the actual jobs done by employees, and not exclusively

lawfulness of the practice of course, depends on the common questions applicable to the exemptions, as discussed above. There are no individual issues here. The claim here is not that the employees did not take the breaks—which would present individual issues—but that they were not "provided" to the class members. *See Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1018, 139 Cal.Rptr.3d 315, 273 P.3d 513 (2012) ("State law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday").

17. Defendant does not specifically state what holding or principle of *Vinole* undermines this court's prior decision on class certification. The court therefore infers that it has correctly guessed PwC's intention, since it is the major holding of *Vinole* applicable to this case, and it is also the principle discussed at the citation provided by PwC in its main brief urging decertification. *See* Motion To Decertify at p. 25 (ECF p. 33). In its Reply, PwC simply includes *Vinole* in a footnoted string cite for the proposition that there have been "watershed developments" since the certification order was issued. *See* PwC Reply (ECF No. 529) at p. 1 n. 2 (ECF 8 n. 2).

focus on the label attached to their jobs, or the employer's policies regarding their work.

### C. *Marlo v. United Parcel Service, Inc.*

In *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942 (9th Cir.2011), the employer had classified certain full time supervisors ("FTS") as "executive and administrative" employees, and thus exempt from the mandatory overtime pay requirements of California's labor laws. Plaintiff alleged that the supervisors were mis-classified, and the district court certified a class, with Marlo as their representative. Later, the court decertified the class, finding that the plaintiff had not established predominance, and that he "has not come forward with common proof sufficient to allow a fact-finder to make a class-wide judgment" as to the supervisor positions previously certified. *Id.*, 639 F.3d at 945.

The Ninth Circuit affirmed the decertification of the class. The court first affirmed the district court holding that plaintiff bore the burden of proof on defendant's motion to decertify. *Id.*, 639 F.3d at 947. The Court then affirmed the district court finding that plaintiff had not met his burden to show predominance "as to these particular exemptions." For example, plaintiff did not provide evidence on whether the supervisors were "primarily engaged" in exempt activities, or whether they customarily and regularly exercised discretion and independent judgment. *Id.*, 639 F.3d at 945.

In the district court, the critical issue was whether plaintiffs could present "common proof of misclassification." *Marlo v. United Parcel Service*, 251 F.R.D. 476, 480 (C.D.Cal. 2008) (Pregerson, J.). That court was careful to avoid weighing the evidence "or otherwise evaluat[ing] the merits of a plaintiff's class claim." *Id.*, 251 F.R.D. at 481 n. 2, *citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). But it also recognized that "this principle does not prevent a court from comparing the class claims, the type of evidence necessary to support a class-wide finding on those claims, and the bearing of those considerations on Rule 23 certification." *Id.* Once again, the court discerns nothing in this

Ninth Circuit decision that undermines its certification decision.

### 1. Use of "Policies and Procedures."

 *Marlo* rejects, as did *Wells Fargo* and *Vinole* before it, the idea that the class proponents can rely on the employer's "policies and procedures" to establish sufficient evidence of predominance. *Marlo*, 639 F.3d at 948. This court did not rely on PwC's policies and procedures, but rather examined the factual bases for the class proponent's claim of predominance, as discussed above.

### 2. Week–by–Week Examination to Determine Whether Employee is "Primarily Engaged" in Exempt Activities.

As PwC points out, *Marlo* states that the district court did not err "in requiring a week-by-week determination of exempt status." *Marlo*, 639 F.3d at 948. PwC argues from this, that this court is required to conduct a week-by-week analysis of the job duties of each and every PwC Attest Associate, and therefore, class treatment makes no sense.

PwC's argument attempts to prove much too much. First, the fact that the district court in *Marlo* "did not err" does not mean that a week-by-week analysis is required in every case. In any event, what the district court "did not err" in was in requiring plaintiffs to *address* the "primarily engaged" requirement: "Equally important, there is no indication that Plaintiff's evidence addresses the 'primarily engaged' element of the exemption, and specifically the week-by-week aspect of the analysis." *Marlo*, 251 F.R.D. at 486. Nothing in the district court decision required an explicit week-by-week analysis beyond a showing of "common proof." The court was explicit about this:

> The Court does not suggest that a showing of the amount of time each individual spends on exempt versus nonexempt work is necessarily required to maintain a class action. A plaintiff could present common proof on this issue.

*Id.* Accordingly, the Ninth Circuit language must be understood to affirm the district court's requirement of "common proof" to meet the week-by-week analysis, not that

individual proof of every employee, every week was required.

This court's certification decision accepted the common proof offered by both sides. Nothing in PwC's little mountain of declarations indicated that whether an Attest Associate was engaged in exempt work depended upon which work-week the court examined. To the contrary, the declarations showed the commonality of the work, and gave no indication that this commonality would be dissolved if viewed on a week-by-week basis.

Second, PwC's position is too sweeping an argument. Notwithstanding all the common questions and common proof that could be offered, and that were offered in this case, it is always the case that an employee's work *could* be examined on a week-by-week basis. If that is all that is required to defeat a class, PwC would have found the magic bullet that would eliminate most class actions in the wage and hour context. This court does not read *Marlo,* nor any other pronouncement of the Ninth Circuit, or the Supreme Court, so broadly.

### D. *Campbell v. PricewaterhouseCoopers, LLP* (9th Cir.).

On March 11, 2009, this court granted plaintiffs' motion for summary adjudication, finding that they were ineligible for the "professional" exemption. That provision of California regulations exempted "licensed" accountants, and members of "learned professions," whether licensed or not. *Campbell v. PricewaterhouseCoopers, LLP,* 602 F.Supp.2d 1163 (E.D.Cal.2009) (Karlton, J.). On June 15, 2011, the Ninth Circuit reversed, holding that even though plaintiffs were not exempted by the "licensed" accountants provision, they could still be exempted under the "learned profession" provision. *Campbell,* 642 F.3d at 833 (the "professional" exemption is not "categorically inapplicable to unlicensed accounts as a matter of law"); *accord, Zelasko–Barrett v. Brayton–Purcell, LLP,* 198 Cal.App.4th 582, 588, 131 Cal.Rptr.3d 114 (1st Dist.2011) (same).

The Ninth Circuit further determined that fact questions precluded summary judgment on whether the "learned profession" exemption applied. Specifically, the Court found that the plaintiffs' "actual job duties and responsibilities"—the "crucial touchstone for the professional exemption"—was subject to "myriad" and "voluminous" conflicting evidence:

> The parties dispute everything from what Attest associates actually do during audit engagements to whether PwC can reasonably expect unlicensed junior accountants to perform anything more than menial, routinized work. The wide array of evidence from both parties includes depositions from class members and other PwC employees, internal PwC manuals explaining job roles and procedures for audit engagements, and detailed training documents for PwC's auditing software.

*Campbell,* 642 F.3d at 830. Finally, the Court determined that only the fact-finder could "weigh this voluminous conflicting evidence and determine whether Plaintiffs meet the standards of the professional exemption." *Id.*

Thus, the Ninth Circuit decision in *Campbell* did not address class certification. Rather, it was a decision that: (1) on the law, plaintiffs were not categorically excluded from the "learned profession" exemption solely by virtue of their lack of a professional license; and (2) material issues existed with respect to the "learned profession" exemption which precluded a summary adjudication on the merits.

PwC argues that the Ninth Circuit decision in *Campbell* undermined what it seems to think was this court's view that a job title could determine exemption status. *See* Motion To Decertify at p. 38 (ECF p. 46) ("Having the Job Title of Attest Associate Cannot Resolve the Applicability of the Professional Exemption"). It also argues that this court was mistaken on placing the focus "on whether the individual is employed in a qualifying occupation," since *Marlo* makes clear that the focus is on "an employee's 'actual job duties, not the employee's job title or professional field.'" Motion at p. 38 (ECF p. 46).

The Ninth Circuit decision does not undermine this court's language relating to class certification. This court's language, cited by

PwC as now hopelessly incorrect, referred to a phrase that came out of the governing regulation: "But the test considers whether an employee is 'primarily *engaged in an occupation* commonly recognized as learned.'" *Campbell,* 253 F.R.D. at 598 (emphasis added), *quoting* Cal.Code Regs., tit. 8, § 11040(1)(A)(3)(b).[18] Notwithstanding the shifting focus in the language of the regulation from the "employee," to the "position" or to the "occupation," this court's certification order focused not on the title, but the work performed, as required by *Marlo.*

### E. *Wal–Mart v. Dukes.*

In *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), plaintiffs alleged that pay and promotion decisions at Wal–Mart were generally committed to local managers' broad discretion, and that that discretion was exercised "'in a largely subjective manner.'" *Wal–Mart,* 131 S.Ct. at 2547. This discretion, according to plaintiffs, was exercised disproportionately in favor of male employees, leading to an unlawful disparate impact on the female employees. Since Wal–Mart was aware of this, its failure to correct the situation amounted to disparate treatment in violation of Title VII, plaintiffs alleged.

The case turned on "commonality." *Wal–Mart,* 131 S.Ct. at 2550 ("[t]he crux of this case is commonality"). Commonality, in turn, "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal–Mart,* 131 S.Ct. at 2551.[19] The claims of the class members "must depend upon a common contention." *Id.* It is a "common contention" if "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The Court Majority was unable to grasp any common contentions. There was no common policy involved, it found, other than the policy to grant discretion to local managers, and therefore no common contention.[20]

It is not clear to this court what is the basis for PwC's assertion that the record, viewed in light of *Wal–Mart,* "makes clear that Plaintiffs' claims and PwC's defenses cannot possibly be tried on a class-wide basis." Motion To Decertify at p. 11 (ECF p. 19). In *Wal–Mart,* commonality was not shown because plaintiffs "have not identified a common mode of exercising discretion that pervades the entire company." *Wal–Mart,* 131 S.Ct. at 2554–55.

This court's certification decision was consistent with *Wal—Mart.* It found that plaintiffs had identified common contentions, including whether Attest Associates exercised discretion and independent judgment. Moreover, the common questions are capable of generating common answers. As shown above, the evidence presented thus far permits this court to determine "in one stroke" whether the Associates have done so. Other common questions are whether the Associates are performing work described in the regulation defining the "learned profession" exemption, and whether they possess the required academic learning to qualify for that exemption.

## VI. CONCLUSION

For the foregoing reasons, the motion to decertify the class is **DENIED.**

IT IS SO ORDERED.

---

18. The "position" versus "employee" issue is clouded by language that can be found throughout the cases and regulations that mix up those terms. *See, e.g.,* Cal.Code Regs., tit. 8, § 11040(1)(A)(3) (focuses on "occupation"); *Id.* § 11040(1)(A)(3)(b) (focuses on "employee" engaged in the performance of described work); 29 C.F.R. § 541.301(a) (focuses on "employee's" primary duty) (federal regs are incorporated into the Wage Order).

19. *Quoting General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

20. The Court also rejected plaintiffs' assertion that the back-pay claims were appropriate for a Rule 23(b)(2) class. That appears to have no relevance to this lawsuit, which involves a Rule 23(b)(3) class.